STATE ex rel. NORTHWESTERN COLONIZATION & IMPROVEMENT CO. OF CHIHUAHUA v. HULLER et al.

SYLLABUS BY THE COURT.

1. An action of quo warranto, or in the nature of quo warranto, is the proper remedy to test the right of office in a private corporation.                                    P. 316

2. In a proceeding on information in the nature of quo warranto to oust individual respondents from franchises alleged to be usurped in a private corporation, the corporation is a proper relator, by reason of its special interest in the matter of the inquiry.                                    P. 317

3. Informations in the nature of quo warranto, brought against individuals to inquire by what right they use or exercise the liberties and privileges of a corporation, may be brought on behalf of the state on the relation of any person or persons having an interest injuriously affected.     P. 320

4. Quo warranto, or a proceeding in the nature thereof, lies only against one who is in the possession and user of the office, or who has been admitted thereto.           P. 323

5. The failure to require a bond of the relator in a proceeding in the nature of an information in quo warranto, while erroneous, does not amount to prejudicial error, where after judgment of ouster against the respondent such judgment is affirmed on appeal.                       P. 327

State ex rel. v. Huller, 23 N. M., 306

6. An information in the nature of quo warranto, while retaining its criminal form, is in modern practice regarded as a civil proceeding. P. 328

7. An information in the nature of quo warranto, while criminal in form, need not be drawn with that certainty required of indictments and the principles of good pleading will apply to both parties, as in ordinary civil actions. P. 328

8. Whether the appearance is general or special is governed by the purpose and object of the appearance. If the appearance be for the purpose of objecting to the jurisdiction of the court, and is confined solely to the question of jurisdiction, then the appearance is special, but any action upon the part of the defendant except to object to the jurisdiction which recognizes the case is in court will amount to a general appearance. P. 329

9. To a quo warranto charging an illegal exercise of corporate functions, the plea should, as a general rule, be either the part of the defendant except to object to the jurisdiction must contain allegations of all such facts as are necessary to show authority for the use of the franchises. P. 332

10. The word "person" is a generic term of comprehensive nature, embracing natural and artificial persons, such as corporations. P. 319

Appeal from District Court, Bernalillo County; Raynolds, Judge.

Quo warranto by the state of New Mexico on relation of the Northwestern Colonization & Improvement Company of Chihuahua, against Luis Huller and others. Judgment for relator on the pleadings, and defendants appeal. Affirmed.

Renehan & Wright of Santa Fe and George A. Miller and Walter B. Hawk of Chicago, for Appellants.

Where the object is to oust individuals from the exer-

cise of corporate franchises or against a corporation for usurping a franchise the statute of 9 Anne has no application.

State ex rel v. Tularosa Ditch, 143 Pac. 207; Rex. v. Carmathen, 2 Burrows K. B. R. 869; King v. Ogden, 10 B. & C. 230, 109 Eng. Reprint, 436; Murphy v. Bank of Schuykill, 20 Pac. St. 415; State v. The Peterson, etc., Co., 21 N. J. L. 12; Commonwealth v. Lexington, 6 Ky. (B. Mon.) 398; Rex v. Wardroper, 4 Burr 1964; Terhune v. Potts, 47 N. J. L. 218; Gibbs et al v. Mayor, etc., 49 N. J. L. 515; State v. Wainwright, 50 N. J. L. 555; Commonwealth v. Union Fire, etc., Co., 5 Mass. 230; Short on Informations, Mandamus and Prohibition, 115; 2 Hawkins P. C. Ch. 26, Sec. 16; High Extra Legal Rem. Secs. 682, 698; 1 Tidd's Practice, 657; 2 Tidd's Praceice, 951; Rex. v. White, 5 Ad. & E. 613; Rex v. aPrry, 6 Ad. & El. 810; Leroy v. Cusache, 2 Rolle 115; People v. Richardson, 4 Cow. (N. Y.) 109; 6 Com. Dig. Tit. Quo. War. C. 3; State v. Gleason, 12 Fla. 215; State v. Stewart, 6 Houst. (Del.) 373; Com. v. Bank, 2 Grant's Cas. (Pa.) 392; Vrooman v. Michie, 69 Mich. 42; Com. v. Cluley, 56 Pa. St. 270.

Informations in the nature of quo warranto against individuals to inquire by what right they exercise privileges and franchises of a corporation must be brought by and in behalf of state and filed and prosecuted by Attorney General.

High Extra. Leg. Rem. 624; Spelling Extra. Relief, 1773; Bailey Habeas Corpus, Sec. 343, 344; Angell & Ames on Corps. Sec. 734; State v. Gleason, 12 Fla. 190; Donnelly v. People, 11 Ill. 552; People ex rel Jones v. North Chicago R. Co., 88 Ill. 537; Dorsey v. Ansley, 72 Ga. 460; People v. Waite, 70 ll. 25; In Re. Bank of Mt. Pleasant, 5 Ohio 249; State v. Moffitt, 5 Ohio 358; Osgood v. Jones, 60 N. H. 543; Ramsay v. Garhart, 27 Ark. 12; State v. Taylor, 50 Ohio St. 120; State ex rel Burnett v. Town Council, 30 Ala. 66; Rice v. Bank, 126 Mass. 300, 303; Goddard v. Emithett, 3 Gray (Mass.) 116; High Ex. Leg. Rem. (3rd Ed.) Section 602; People v. Healy, 230

State ex rel. v. Huller, 23 N. M., 306

Ill. 287, 288; Chambers v. Baptist Ed. Soc. 1 B. Mon. (Ky.) 215, 220.

Informations in the nature of quo warranto against individuals to inquire by what right they exercise privileges and franchises of a corporation must be brought by and in behalf of state and filed and prosecuted by Attorney General.

High Extra. Leg. Rem. 624; Spelling Extra. Relief, 1773; Bailey Habeas Corpus, Sec. 343, 344; Angell & Ames on Corps. Sec. 734; State v. Gleason, 12 Fla. 190; Donnelly v. People, 11 Ill. 552; People ex rel Jones v. North Chicago R. Co. 88 Ill. 537; Dorsey v. Ansley, 72 Ga. 460; People v. Waite, 70 Ill. 25; In Re. Bank of Mt. Pleasant, 5 Ohio 358; Osgood v. Jones, 60 N. H. 543; Ramsay v. Carhart, 27 Ark. 12; State v. Taylor, 50 Ohio St. 120; State ex rel Burnett v. Town Council, 30 Ala. 66; Rice v. Bank, 126 Mass. 300, 303; Goddard v. Smithett, 3 Gray (Mass.) 116; High Ex. Leg. Rem. (3rd Ed.) Section 602; People v. Healy, 230 Ill. 287, 288; Chambers v. Baptist Ed. Soc. 1 B. Mon. (Ky.) 215, 220; Terr. v. Virg. Rd. Co., 2 Mont. 96; Commonwealth v. Fowler, 10 Mass. 290; Porter v. People ex rel, 182 Ill. 516; Hessing v. Attorney General, 104 Ill. 292; Atty. Gen. v. rIon Mongers Co. 2 Beavan (17 Eng. Ch.) 313; Rex. v. Marden, 3 Burr. 1812; Shortt on Man. & Prohibition, 117; Frey v. Michie, 68 Mich. 323; Babcock v. Hanselman, 56 Mich. 27; Com. v. Allen, 128 Mass. 310; State v. Anderson, 45 Ohio St. 196; People v. Pratt, 15 Mich. 184; Rex v. Bennett, 1 Strange, 101, 105; Mathews v. State, 82 Tex. 577; Rex v. Brown, 4 T. R. 276; People v. Knight, 13 Mich. 231; Rice v. Bank, 126 Mass. 300; State v. Taylor, 50 Ohio St. 120; Terr. v. Lockwood, 3 U. S. 236; Miller, et al., v. Town of Palermo, 12 Kan. 14; State v. Douglas Rd. Co., 10 Ore. 198; Wright v. Allen, 2 Texas 158; Sanders v. Gatling, 81 N. C. 222, 224; Robinson v. Jones, 14 Fla. 256; Taylor v. Holmes, 14 Fed. Rep. 489, 505; Haupt v. Rogers, 170 Mass. 71; State v. Ashley, 1 Ark. 304; People v. Burns, 212 Ill. 227; Vernon Soc. v. Hills, 6 Cow. (N. Y.) 23; Scott v. Clark, 1 Ia. 70; Stechman v. Vickers, 51 N. J. L., 180; Com. ex rel, v. Dillon, 81 Pa.

St., at 45; Stahe v. Keene, 64 Conn. 215; State v. Tracy, 48 Minn. 497; People v. Clayton, 4 Utah 433; State v. Brown, 5 R. I. 1; High Ex. Leg. Rem., Sec. 697; Ang. & Ames on Corp., Sec. 734; Tancred on Inform. Nat. Quo. War., pp. 13-15; Cook on oCrp., Sec. 632; Spelling ex rel., Sec. 1835.

Statute in som estates provides relator may be inserted in information by state but such proceedings are by and on authority of the State.

Terr. v. Hauxhurst, 3 Dak. 208; State v. Gastinel, 18 La. Ann. 517; State v. Smith, 3 Minn. 240; People v. Mcntyre, 10 Mont. 166; People v. Ryder, 12 N. Y. 433; State v. Hardie, 1 Ire. (N. C.) L. 42.

Other states relator is permitted by statute to bring action in name of state.

Hussey v. Heim, 17 Tex. Civ. App. 153; Davis v. State, 75 Tex. 426; State v. Bell, 116 Ind. 5; State v. Kennerly, 26 Fla. 608; Toney v. Harris, 85 Ky. 453; State v. Moores, 52 Neb. 634; People v. Perley, 80 N. Y. 624; Stanford v. Ellington, 117 N. Car. 158.

In all cases relator must show good title ni himself and burden is on him.

People v. McDill, 15 Mich. 164; 23 Am. & Eng. Enc. P. & P., 626 and cases cited; 32 Cyc. 1460 and cases cited; 41 Cent. Dig., Title "Quo War." Sec. 63; 32 Cyc. 1435.

Defendant must have been in possession and user of office or franchise at time of usurpation.

Haines v. C. Freeholders, 47 N. J. L. 545; Updegraff v. Crans, 47 Pa. St. 103; State v. Meek, 129 Mo. 432; New Jersey v. Mayer, etc., 8 L. R. A. 697; Atty. Gen. v. Sup. R. Co., 23 Wis. 604; People v Stanford, 77 Cal. 360; Bradshaw v. Camden, 39 N. J. L. 416; Sablett v. Bedwell, 47 Miss. 266; Atty. Gen. v. Megin, 63 N. H. 378; Roberson v. Bayonne, 68 N. J. L. 326; Haines v. Freeholders, 47 N. J. L. 454; People v. Ferris, 16 Hun.

State ex rel. v. Huller, 23 N. M., 306

(N. Y.) 221; People v. McCullough, 11 Abb. Pr. N. S. 129; Clapp v. Guy, 31 N. Y. App. Div. 535; Updegraff v. Crans, 47 Pa. St. 103; Rex v. Ponsonby, 1 Ves. Jr. 1; Bull nisi prius, 211; Dillon Mun. Corp., Sec. 1565; Rex v. Whitwell, 5 T. R. 85; Rex v. Marsden, 3 Burr 1812; Willcock quo warranto 11 par. 354; State v. K. B. Tpk. Co., 38 Ind. 71; Comwlth. v. Pittsburg R. Co., 58 Pa. St. 26; State v. Pipher, 28 Kans. 127; Atty. Gen. v. Sup. R. Co., 93 Wis., 604; State v. Camden Co., 47 N. J. L., 454; Osgood v. Jones, 60 N. H. 282, 288; High ex seq. Rem. Sects. 619, 627, 641; 2 Hawk. p. c. ch. 26, sec. 16; Shortt on Inf. Mand. & Pro., p. 132; Rex. v. Whitwill, 5 T. R. 85; Reg. v. Tidy (1892) 2 Q. B. 179 (67 L. T. Rep. N. S. 319); Reg. v. Pepper, 7 A. & E. 745, (7 L. J. Q. B. 92);Rex v. Ponsonby, 1 Ves. Jr. 1; 17 Encyc. P. & P., p. 107, citing: Sablatt v. Bedwell, 47 Miss. 266; Atty. Gen. v. Megin, 63 N. H. 378; Roberson v. Bayonne, 58 N. J. L. 326; Haines v. Chosen Freeholders, 47 N. J. L. 454; People v. Ferris, 16 Hun. (N. Y.) 221, (76 N. Y. 326); People v. McCullough, 11 Abb. Pr. N. S. 129; Clapp v. Guy, 31 N. Y. App. Div. 535; Updegraff v. Crans, 47 Pa. St. 103; Rex v. Ponsonby, 1 Ves. Jr. 1; Rex v. Whitwell, 5 T. R. 85.

If relator had any remedy mandamus was the proper one.

Willcock on Mandamus, Ch. 2, par. 34; 3 Black. Com. 110; Knox v. Allegany Co., 37 Pa. St. 279; Ken. v. Dennison, 24 How. 66; U. P. R. R. Co. v. Hall, 91 U S. 355; Shortt on Inf. Mand. & P. p. 228, 290, 293; Dillon Mun. Corps. Sec. 1501; Baggott v. Turner, 58 Pac. (Wash.) 212; Wilcox v. Wendell, 5 Wend. 231; In Re Boyle, 9 Wis. 240; Shortt on Mun. C. Quo Warranto & Pro. p. 132; Reg. v. Mayor, etc., 11 Adol. & Ell. 512; High Extra Leg. Rem. Sec. 618; Cook on Corps. Sec. 618.

State will not interfere unless public is affected.

1 Beach on Corps. Sec. 58; Terr. v. Virg. Rd. Co., 2 Mont. 96; Rex v. Ogden, 10 B. & C. 233; Rex v. Williams, 1 Burr. 407; Rex v. Stacey, 1 Term R. 1; Atty. Gen. v.

Metford R. Co. 125 Mass. 515; 2 Spelling Ex. Relief, Sec. 1818; Ramsay v. Carhart, 27 Ark. 12, 14; State v. Bryan, 50 Fla. 293; State v. O. B. Co., 91 Ia. 517; Rice v. Natl. Bk., 126 Mass. 300, 304; Gunton v. Engle, 11 Fed. Cas. 5870; People v. Suter St. R. Co., 117 Cal. 604; State ex rel v. Hare, 121 Ind. 308; People v. M. G. L. Co, 38 Mich. 154; Purvis v. M. V. R. Co., 51 Miss. 602; State v. Miller, 66 Mo. 328; State v. Moffett, 5 Ohio 358; People v. Ridgeley, 21 Ill. 64; Tappan v. Gray, 9 Paige, (N. Y.) 507; Com. v. eLx., etc., T. R. Co., 6 B. Mon. 397; State v. C. B. T. Co., 11 Neb. 354; Cupit v. Park City Bk., 20 Utah, 292; Atty. Gen. v. Ch. R. Co., 35 Wis. 425; State v. Taylor, 50 Oh. St. 120; Wallace v. Anderson, 5 Wheat. 291; Wright v. Allen, 2 Tex. 158; Com. v. Pittsb. R. Co., 3 Daup. Co. (Pa.) 189; Terr. v. Paniter, 6 Ind. Terr. 505, 98 S. W. R. 352; Haupt v. Rogers, 170 Mass. 71; Spelling ex rel, Sec. 1830.

Corporation cannot act as relator.
4 and 5 Will. & Mary, C. 11; Weavers Co. v. Forrest, 2 Str. (Eng.) 1241; In re. Barker, 56 Vt. 14; U. S. v. Stocking, 87 Fed. 857; Angell & Ames, on Corps. Sec. 748.

Bond is a prerequisite to filing of information.
High Ex. Leg. Rem. Sec. 608; 2 Hawk. P. C. ch. 24, Sec. 5; 4 and 5 Will & Mary, c. 11; Rex. v. Brook, 2 T. R. 197; Cole on Crim. Inf. and Inf. Quo. War. p. 200; 1 Salk. 176; Ex Parte De Vore, 136 Pac. 47; State ex rel v. Van Stone, 17 N. M. 41; Rex v. Howell, Cases Temp. Hardwicke, 247; Rex. v. Hertford, 1 Salk. 376; Rex v. Morgan, 2 Stra. 1042; Rex v. Filewood, 2 T. R. 145; Rex. v. Brooke, 2 T. R. 190.

Court acquired no jurisdiction person of Huller, who appeared specially.
Harkness v. Hyde, 98 U .S. 476; Pennoyer v. Neff, 95 U. S. 722; Southern Pac. Co. v. Denton, 146 U. S. 202; C. J. p. 44, Sec. 36; Morse v. Rankin, 51 Conn. 326; Converse v. Warren, 4 Iowa, 158; Chesapeake, etc., R. Co. v. Heath, 87 Ky. 651; Ames v. Windsor, 19 Pick.

247; Dewey v. Greene, 4 Den. 93; Mullen v. Norfolk, etc., Canal Co., 114 N. C. 8; Bes Line oCnstr. Co. v. Schmidt, 16 Okla. 429; Fisher v. Crowley, 57 W. Va. 312; Quesenberr yv. People's Bldg., etc., Assoc., 44 W. Va. 512; Harkness v. Hyde, 98 U. S. 476.

H. B. Jamison, of Albuquerque, Francis C. Wilson, of Santa Fe, J. R. Garfield, of Cleveland, Ohio, and D. J. Cable of Lima, Ohio, for appellee.

The remedy sought is the proper one.

Hudson v. Green Hill, etc., 113 Ill. 618-630; 32 Cyc. 1426; State ex rel. Comunity Ditches v. Tularosa Townsite Co., decided Aug. 26, 1914, by N. M. S. Court; Rex v. Carmarthen, 3 Burr. 869; Murphy' v. Farmers' Bank, 20 Pa. 415; Com. v. Lexington, 6 B. Mon. 397; State v. The Paterson & Hamburg Turnpike Co., 21 N. J. L. 9; Santa Clara Co. v. So. Pac. Co., 118 U. S. 396; Pembia Min. Co. v. Penns., 125 U. S. 189; Covington Turnpike Co. v. aSnford, 164 U. S. 578-592; Dayton Coal, etc., v. Barton, 103 Tenn. 611, S. C.; 53 S. W. 971.

A corporation may be a relator in proceedings in the nature of quo warranto.

Beverly v. City of Hattiesburg, 83 Miss. 621-624; State ex rel v. East Fifty St. Ry. Co., 140 Mo. 539; State ex rel v. L. D. Co., 246 Mo. 618; 152 S. W. 67; City of Olathe v. M. K. I. Ry. Co., 116 Wis. 142, 92 N. W. 546; State ex rel v. Minahan Bldg. Co., 123 N. W. 258; Thompson on Corporations, Sec. 7366; Crawford v. Warwick, 87 Va. 110, S. C. 10 L. R. A.; Jeffries v. Ipswick, 153 Mass. 42, S. C. 26 N. E. 259.

As Huller contested the jurisdiction concerning the subject matter he entered a general appearance.

Dailey v. Foster, 128 Pac. (N. M.) 71; Edgell v. Felder, 84 Fed. 69; Elliott v. Lawhead, 43 O. S. 176-177; Maholm v. Marshall, 29 O. S. 611; Marsden et al. v. Soper, 11 O. S. 503 and 505; Evans v. Iles, 7 O. S. 234: Smith v. Hoover, 39 Ohio State, 249, 257, 258; Railroad

Co. v. Bell Centre, 48 Ohio St. 273 S. C.; 27 N. E. 454; Burdett v. Corgan, 26 Kans. 102, 104; opinion by Justice Brewer. The above case is cited with approval in Sugg v. Thornton, 132 U. S. 524, 529, 530; Cohen v. Trowbridge, 6 Kans. 385; Grantur v. Rosecrance, 27 Wis. 419; Allison v. White, 32 Wis. 309.

### STATEMENT OF FACTS

On March 16, 1914, a petition for leave to file an information in the nature of quo warranto was filed in the district court of Bernalillo county, by the Northwestern Colonization & Improvement Company of Chihuahua, representing that it had obtained the consent of the Attorney General to institute the action, and that the said company was, and is, a corporation organized under the laws of the territory of New Mexico, in the year 1889, and, after certain formal allegations concerning the organization of said company, its board of directors, officers, and location of its office in the state of New Mexico, the petition further recited that certain persons, the respondents herein named, conspiring together with one George R. Pierce, since deceased, undertook to act together and to exercise corporate functions in the manner and pretending to be in behalf of the said Northwestern Colonization & Improvement Company of Chihuahua; that they met and held a meeting at Deming, N. M., on the 14th day of December, 1910, and, pretending to be stockholders of the said corporation, elected certain persons as directors of the said corporation, and passed a resolution authorizing the directors, so pretending to be elected, to meet in the city and republic of Mexico for the purpose of transacting business as a corporation organized under the laws of New Mexico and in the name of the relator herein, and did other acts in the name of the petitioner, such as causing to be issued certificates of stock in the name of the petitioner and certain false statements or certificates appointing Arthur A. Temke the resident agent, upon whom process could be served, and causing the same to be filed with the State Corporation Commission of the State of New Mexico, and likewise assumed to exercise corporate

powers in the name of the relator, causing to be issued certain false and fraudulent power or powers of attorney, authorizing the attorneys in fact to appear in certain proceedings pending in the courts of New Mexico and to represent themselves as attorneys to act in behalf of the relator.

The petition further continued with recitals as follows: That no one of said persons is the owner of any shares of stock in the relator corporation, excepting S. D. Haskell, who claims and appears to be the owner of 1,000 shares of stock in the said company; and that all of the ercised by the said persons named as respondents have been usurped upon the petitioner and the state of New Mexico, and they have exercised, and are still assuming to exercise, without legal authority, the said offices and franchises, to the damage and prejudice of the relator and of the state; concluding with a prayer for a judgment of ouster.

An order to show cause, addressed to the respondent, was thereafter made by the district court of Bernalillo county, requiring them to appear on April 3, 1914, and show cause why an infromation should not be filed against them, and directing personal service of a copy of the order, together with a copy of the petition upon the resident agent of the said company as constituted by the respondents, acting as a board of directors of the alleged company. On the said 3d day of April, 1914, there was filed in the office of the clerk of said court a demurrer setting up numerous grounds, which was shortly thereafter overruled and leave granted to file information, which was accordingly filed on April 16, 1914, in substantially the same form as the petition.

Thereupon the trial court summoned the respondents to appear on the 1st day of June, 1914, and make answer unto the information and directed service of process to be made upon Arthur A. Temke, who had been appointed by respondents as their resident corporate agent for service of process in New Mexico. The respondents, other than Lindauer, appearing specially for that purpose, or so denominating their appearance, filed (1) a motion to quash

the return of the sheriff upon said order or citation, and vacate the order authorizing such service, (2) to quash the said information or strike the same from the files of the court, and (3) to vacate the order indorsed on said citation; and the said Lindauer, also appearing specially, or so denominating his appearance, filed his plea to the jurisdiction of the court and a plea in abatement of said citation or summons, all of which motions and pleas were overruled by the court. Thereafter various demurrers and pleas were filed by the respondents, and relator subsequently filed replications. Demurrers were filed by respondents, to the replications, which were overruled, and thereafter rejoinders were filed. To the rejoinders the relator filed a surrejoinder, setting up as exhibits two certain contracts. The respondents thereafter filed rebutters, and other pleadings, demurrers, and motions too numerous to include in this statement of facts were interposed, from time to time, culminating in a motion for judgment on the pleadings, which motion was sustained and a judgment of ouster entered by the trial court.

## OPINION BY THE COURT

HANNA, C. J., (after stating the facts as above). We shall consider the assignments of error from the standpoint of the importance of the questions raised, as the order in which the assignments of error are presented is not the same in the briefs, and tends to confusion.

[1] The first question to be considered is whether an information in the nature of quo warranto is the proper remedy to try the title to office in a private corporation. In this jurisdiction we unfortunately have no statute upon the subject of this remedy and are left entirely to the common-law principles and our interpretation of the scope of the statute 9th Anne, chapter 20. The English rule is that to justify the employment of quo warranto to try title to office it is essential that the office be such as the law deems of a public nature. The Massachusetts courts seem to be the only American courts which follow the English rule. All other American courts agree in holding that an action of quo warranto, or in the nature of quo warranto,

is the proper remedy to test the right of office in a private corporation. The American cases are collected in the note to the case of George H. Brooks, plaintiff in error, v. State of Delaware ex rel. Robert H. Richards, Attorney General, reported in 26 Del. 1, 79 Atl. 790, 51 L. R. A. (N. S.) 1126, Ann. Cas. 1915A, 1133. See, also, High on Extr. Leg. Rem. (3d Ed.) § 653.

[2] The next question in order of importance is raised by point 6 in appellant's brief, that a corporation cannot act as relator in informations in the nature of quo warranto. It is argued that under the provisions of the statute of Queen Anne, § 4, the right to exhibit quo warranto informations upon relation was confined to "any person or persons desiring to sue or prosecute the same and who shall be mentioned in such information or informations as the relator or relators." It is further pointed out that the costs to be recovered are "his or their costs," which would preclude the assumption that a corporation falls with the purview of the statute. It is said that the reason for the rule is that an informer or relator in quo warranto procedings must be, a person or individual as distinct from the corporate entity, because the entire purpose of the informer or relator is to inform the crown or state officers of certain facts under oath for the purpose of moving him officially to take action in the premises, and that a corporate entity is not capable of taking an oath or giving him the information.

We cannot see the appropriateness or force of this argument. It might just as well be argued that a trustee could not bring an action on behalf of his cestui que trust, or that a guardian could not bring an action on behalf of his ward, under appropriate circumstances. Appellant has cited numerous authorities which we do not, however, consider in point, and we are disposed to agree with the contention of appellee that the real test of the right of the relator to bring a proceeding in quo warranto is whether the relator has the necessary interest to maintain the action. We are of the opinion that an information for the purpose of dissolving a corporation or seizing its franchises cannot be prosecuted in the name of the state at the rela-

tion of private persons, even though leave be first obtained
of the court, but that such proceeding must be instituted
by the Attorney General.    High's Extr. Leg. Rem. (3d
Ed. § 698.   In this case, however, it is not a suit to dis-
solve the corporation, but to inquire by what right or au-
thority individuals named as respondents are exercising the
franchises of the corporation, and it would seem to be clear
that the corporation itself would be necessarily materially
interested in any alleged usurpation of its franchises.   It is
contended that no cases in point upon this question can
be found.   A number of cases, however, have been cited
by appellee involving the right of municipalities to main-
tain an action, and while these cases are not strictly in
point, we cannot agree that a different line of reasoning
should apply to private corporations, but consider that the
rule as applied to municipal corporations, must logically
be extended to private corporations.   A municipal corpora-
tion cannot verify an information or respond in costs any
more than can a private corporation, as both are neces-
sarily compelled to act through officers or agents.   The
cases cited by appellee are Beverly v. Hattiesburg, 83 Miss.
621-624, 36 South. 74; State ex rel. Kansas City, Mo., v.
East Fifth St. Railway Co., 140 Mo. 539, 41 S. W. 955,
38 L. R. A. 218, 62 Am. St. Rep. 742; State ex rel. City
of St. Louis v. L. D. Co., 246 Mo. 618-637, 152 S. W. 67;
City of Olathe v. M. & K. I. Ry. Co., 78 Kan. 193, 96
Pac. 42.

In the last-mentioned case, the court distinctly held that
a municipal corporation is a person, within the meaning
of the word as used in a statute providing that:

"Where the action is brought by a person claiming an
interest in the office, franchise or corporation, or claiming
any interest adverse to the franchise, gift or grant which is
the subject to the action, it shall be prosecuted in the name
and under the direction and at the expense of such persons."

In State ex rel. Vilter Mfg. Co. v. Milwaukee, B. &
L. G. R. Co., 116 Wis. 142, 92 N. W. 546, the court said
a private corporation is a person, within the meaning of
section 3466, Stats. 1898, providing that an action may
be brought by the Atotrney General in the name of the

state "when any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within the state."

[**10**]   Cases to the same effect might be multiplied, but it is sufficient to say that American authorities are in one accord in holding that the word "person" is a generic term of comprehensive nature, embracing natural and artificial persons, such as corporations.

The so-called Tularosa Case is referred to as an authority upon the point under consideration.   This case was first reported under the title of Community Ditches or Acequias of Tularosa Townsite, a Corporation, v. Tularosa Comumnity Ditch, 16 N. M. 750, 120 Pac. 301, in which case it was held that:

"The remedy for the unlawful assumption of the right to act as a corporation, and the exercise of corporate rights ultra vires, is by quo warranto and not in equity."

On a second appeal of this case, reported in 19 N. M. 352, 143 Pac. 207, this court referred to the question of whether the common law or the statute of Anne applied to a proceeding where the object sought is to oust individuals from the exercise of a corporate franchise, or against a corporation for usurping a franchise.   The court said that, the information having been filed on the assumption that the statute of Anne applied to a proceeding in the nature of the one before the court, and there having been no objection upon that ground, the court would treat the information as properly filed, although there was doubt as to whether the statute had any application to the proceeding, citing Rex v. Carmarthen, 2 Burr, 869, and other cases relied upon by apellants.

For the reasons indicated the Tularosa Case can have little importance as authority in the consideration of the question before the court.

We conclude that, in a proceeding on information in the nature of quo waranto to oust individual respondents from franchises alleged to be usurped in a private corporation, the corporation is a proper relator, by reason of its special interest in the matter of the inquiry.

[3]    This brings us to the next phase of appellant's objection, as to the right of relator to be heard. This objection as stated under point 2 in appellant's brief is that:

"Informations in the nature of quo warranto brought against individuals to inquire by what right they use and exercise the liberties, privileges, and franchises of a corporation, must be brought by and in behalf of the state, and filed and prosecuted by the Attorney General of the state."

In support of this contention appellants cite numerous authorities. The most succinct statement of the entire question, however, we believe, is given in Bailey on Habeas Corpus, at section 343, from which we quote as follows:

"At common law, private individuals, without the intervention of the Attorney General, cannot, either as of right or by leave of court, file an information in the nature of a quo warranto. The abuse of a public franchise under color of a legislative grant is a public wrong, as distinguished from a private grievance, hence the remedy by quo warranto must proceed from the Attorney General, or some authorized agent of the sovereign power, to dissolve it. In cases involving merely administration of corporate functions or duties which touch practically only individual right, such as the election of officers, admission of a corporate officer or member, and the like, the writ may issue at the suit of the Attorney General, or of any such person desiring to prosecute the same, where such method has the sanction of statutory permission; and where not, and such person has an interest which is injuriously affected, of such a character as will satisfy the proceedings, he may, upon leave of the court, in the name of the state or Attorney General, prosecute such proceedings."

It is our opinon that the appellants have fallen into error in an assumption that the sole question under consideration in the present case is one affecting public interest, such as might be said to arise from the abuse of a public franchise, refered to by Mr. Bailey. We have already pointed out in this opinion that, where the object of a suit is to dissolve a corporation or seize its franchises, the action can only be prosecuted in the name of the state. This principle is well stated by Mr. High in his work on Extraordinary Legal Remedies in the following language (section 624):

"Since, under the American system, all power emanates

State ex rel. v. Huller, 23 N. M., 306

from the people, who constitute the sovereignty, the right to inquire into the authority by which any person assumes to exercise the functions of a public office or franchise is regarded as inherent in the people in the right of their sovereignty. * * * "

This case does not involve a public question such as would arise were an attack made upon the franchise of the corporation, but is a case involving a private right, and one such as referred to by Mr. Bailey when he speaks of a case involving merely the adminstration of corporate functions or duties, which touch practically only individual rights, such as election of officers, admission of a corporate officer or member, and the like; in which cases this author recognizes the right of a private person, having an interest which is injuriously affected, to maintain proceedings in the nature of quo warranto, upon leave of court, in the name of the state or Attorney General. See, also, High's Extra. Leg. Rem. § 654. Mr. Bailey supports his text by the citation of the following authorities: Murphy v. Farmers' Bank, 20 Pa. 415; People v. North Chicago R. Co., 88 Ill. 537; Kenney v. Gas Co., 142 Mass. 417, 8 N. E. 138; State v. Turnpike Co. (1 Zab.) 21 N. J. Law, 9.

Upon examination of the Pennsylvania case referred to, a first impression would seem to warrant the conclusion that the case was not authority, because the opinion of the court is an interpretation of a legislative act of 1836, conferring the right to maintain the action on "any person or persons desiring to prosecute the same." A more careful examination of the case, however, discloses that the same words appear in the statute of Anne, and were evidently taken from that statute. So that we may reasonably assume that the conclusion of the court would have been the same had the statute of Anne been alone under consideraion. This case is so instructive as pointing out the distinction between the use of the remedy quo warranto in cases involving public rights only and in cases involving individual grievances, that we take the liberty of quoting somewhat extensively therefrom. The court said:

"The statute of Anne was enacted in 1710, and gave jurisdiction in quo warranto to the Queen's Bench. In 1722 our

Supreme Court was authorized to issue habeas corpus, certiorari, writs of error, and all remedial writs, and were clothed with the same jurisdictions and powers as the Justices of the Court of King's Bench, Common Pleas, and Exchequer, at Westminster. This was a sufficient warrant for this court to adopt in practice a rule prescribed in the statute of Anne, and justifies the remark of Judge Gibson in Burrell's Case [1 McCord Eq. (S. C.) 31, note] that the substance of that statute had been adopted before our Revolution as part of our common law.

"These words have been the subject of judicial decision, and the authorities show that they do not give a private relator the writ of quo warranto in a case of public prerogative involving no individual grievance. On this point the authorities are full, direct, and harmonious. The usurpation of an office, established by the Constitution, under color of an executive appointment, and the abuse of a public franchise under color of a legislative grant, are public wrongs and not private injuries, and the remedy by quo warranto, in this court at least, must be on the suggestion of the Attorney General, or some authorized agent of the commonwealth.

"For the authorities, I refer myself to those cited in the argument of the respondent's counsel. They establish this as the uniform construction. In questions involving the existence of a corporation, in questions involving merely the administration of corporate functions, or duties which touch only individual rghts, such as the election of officers, admission of a corporate officer, or member, and the like, the writ may isse at the suit of the Attorney General, or of any person or persons desiring to prosecute the same."

The Supreme Court of Illinois in a case of the People ex rel. Jones v. North Chicago R. Co., 88 Ill., 537, in a well-considered opinion, clearly pointed out the difference between an offense against the public where the state alone may punish or waive its right to do so, and cases affecting private or individual rights, such as "those which merely affect the administration of corporate functions without affecting the existence of the corporation." In the later case it was held that the courts may interpose on a proper showing.

We therefore conclude that information in the nature of quo warranto brought against individuals to inquire by what right they use or exercise the liberties, franchises, and privileges of a corporation may be brought on behalf of the state on the relation of any person or persons having an interest injuriously affected.

[4] We are now brought to a consideration of the sufficiency of the petition. It is first contended by appellant that the information merely charges the conclusions of the pleader, which, if true, are unnecessary and irrelevant, and that the relator expressly denies and repudiates any suggestion that the defendants, or any of them, had ever entered into, usurped, or had possession of any office, liberty, privilege, or franchise.

It is to be conceded that the information should do more than assert a mere claim to the right to exercise an office or franchise, and that possession and user of the office by other than relator without color of right is essential to be pleaded. The principle is well established as applied to usurpation of office in private corporations and the usurpation by persons claiming public office as well. The rule in this respect is thus stated in 17 Enc. Pl. & Pr. 407:

"Quo warranto, or a proceeding in the nature thereof, lies only against one who is in the possession and user of the office, or who has been admitted thereto."

See, also, Spelling on Inj. and Other Extr. Rem. § 1774. We cannot agree, however, that appellants' objection to the petition is well taken in this respect. Appellants rely upon the case of People, on the relation of Taylor and others, v. Thompson, 16 Wend. (N. Y.) 655, which was an information brought by the Attorney General of New York, charging the defendants with claiming, using and exercising the liberties, privileges, and franchises, of being a body politic and corporate, without being legally incorporated. The court in its opinion pointed out that the language of the statute was derived from the statute of Anne, and while providing that an information in the nature of quo warranto might be filed "where any person shall usurp, intrude into, or unlawfully hold any public office, civil or military, or any franchise, * * *" yet something was obviously required beyond a claim to the office or the exercise of a franchise to authorize the institution of proceedings. In the case at bar, however, the information, after first setting up facts showing the organization of the relator corporation, represented that the

respondents undertook to act together and to exercise corporate functions in the name of the relator, and caused to be published a notice calling a meeting of the stockholders of the relator; that the stockholders held a meeting at Deming, N. M., on the date fixed, at which they claimed to have elected respondents, except two named, as directors of the relator, and caused minutes to be made and entered in a book as minutes of the said relator corporation, and elected officers of said corporation for the purpose of transacting business as a corporation in the name of the relator, and caused to be issued certificates of stock in the name of the relator, and attached thereto a false and fraudulent seal with the name of the relator engraved thereon, and caused to be exectued certain false statements appointing a resident agent, for whom service of process could be had, and caused same to be filed with the secretary of the territory and later with the corporation commission of the state, and, assuming to exercise corporate powers in the name of the relator, caused to be issued certain false and fraudulent powers of attorney.

After continuing with other allegations pertaining to the status of one of the respondents as a stockholder, the information concludes with a general allegation as follows:

"All of which liberties, privileges, franchises, and authority the respondents have usurped and do still usurp upon the state of New Mexico, and have exercised and are still assuming to exercise in said state, without being legally authorized so to do, and without any warrant, grant, or authority of law, to the great damage and prejudice of the relator and of the state."

We deem these several allegations to be sufficient as evidencing user and possession, and therefore consider this objection to the information not well taken.

The next objection urged to the information is that the relator, if entitled to any remedy, has mistaken its remedy; that it should have brought mandamus or bill to permanently enjoin. This position of the appellants is based upon the contention that the information alleges facts which, if true, show the respondents were not, except Haskell, members of the corporation de facto, and that

State ex rel. v. Huller, 23 N. M., 306

their acts were merely pretensions and claims under conspiracy. The argument of appellants upon this question is primarily addressed to the proposition that because the petition is said to treat the respondents as usurpers, and because the attitude of counsel for relator was that the respondents were outsiders, that relator has therefore no right to maintain the action, because under the allegations of the information respondents would neither be de jure nor de facto officers. Authority is cited in support of appellant's position to the effect that where an election of officers is merely colorable, so as to be really no election at all, it does not confer even a de facto position upon the office holders, and that the remedy of relator is not quo warranto but mandamus.

We do not desire to unduly lengthen this opinion by discussion of the remedies of mandamus and injunction, either of which might be available under certain circumstances. The question before us at this time, however, is whether an information in the nature of quo warranto is available. We have pointed out the allegations of the information and it is clear that it does charge that the privileges, franchises, and authority used and possessed by the respondents have been usurped and are still being usurped without legal authority. The difficulty of appellants apparently arises out of the failure to appreciate that the information in this case charges usurpation of the franchises of the corporation. We have pointed out in this opinion that the mere claim to exercise an office or corporate right, privileges, or franchises would not be sufficient, but that user and possession must be attendant circumstances. The necessity for the presence of something more than a claim to the office or franchise is clearly pointed out by the Supreme Court of Wisconsin in the case of Mylrea, Attorney General, v. Superior & St. C. Ry. Co., 93 Wis. 604, 67 N. W. 1138. We add this authority to the authorities already cited in this opinion because, while construing a Wisconsin statute, it points out that the language of the statute is traceable to the statute of Anne, and the opinion clearly shows that there may be a usurpation of the franchises as distinguished from the office.

We agree that usurpation of the offices of the corporation by the respondents may not be established by the pleadings and that for this reason the action might not lie against the respondents as officers, were that the sole question involved, but the petition in this case clearly charges usurpation and user of the franchises of the corporation, and, as we have pointed out, sufficient acts are set out to indicate that there has been a user and possession of the franchise of the corporation, if not the usurpation and user of the offices themselves. The case of People v. Thompson, 16 Wend. (N. Y.) 655, heretofore cited, is also instructive on this point.

To concede the contention that men associated for the purpose of usurping corporate functions or powers must be directors or officers either de facto or de jure of the corporation, in order to authorize an ouster by proceedings in quo warranto, would be to deny a remedy where perhaps none other might be adequate or available. It is clear that quo warranto lies to oust usurpers from the attempted exercise of corporate franchises and powers not granted by the state. Where usurpers set up a pretended corporation where none exists, the remedy is also available, and in the latter case, there being no corporation, clearly they could not be either de facto nor de jure officers of such corporation which has no existence, yet the state doubtless would have the right to oust them from the exercise of the usurped privileges or the franchises of the alleged corporation, and it would be the duty of the state so to do in order to protect the public against the fraud of the usurpers. Mr. High in his work on Extraordinary Legal Remedies, at section 655, says:

"It is to be borne in mind that the question whether an information will lie in the case of a corporate' office is dependent upon the fact of possession or user of the ·office or franchise, and unless an actual user can be shown, in addition to a claim to the office, the information will not lie."

This we believe to be a clear statement of the situation as applied to the facts of the case under consideration. It is, in other words, not a question alone of the possession or user of the office, but is a question as to the pos-

session or user of the franchise, which is both charged and admitted by the pleadings. Therefore the failure to show user and possession of the office is not necessarily fatal, where there is both user and possession of the franchise. In the light of all that we have had to say in this opinion, we cannot agree that this point now under consideration is well taken.

[5] Appellants also contend that a bond is a prerequisite to the filing of an information. We deem it unnecessary to enter into the discussion of the merits of this question, as we do not believe that appellants can be heard upon this point because they are not prejudiced by the ruling of the trial court in the matter of the bond, however erroneous such ruling might have been. It is axiomatic that an error without prejudice is always harmless error. See Elliott on Appellate Procedure, § 632. The same author, at section 631, points out that harmless errors are generally such as concern matters of procedure, while errors affecting primary right are generally prejudicial. A primary right is said to be a fundamnetal right, as contradistinguished from rights which exist by virtue of rules established for the conduct and regulation of matters of procedure. Clearly the matter of the bond is a matter of procedure, unless by the provisions of the statute 4th and 5th, William and Mary, requiring a recognizance from the person or persons procuring such information in the penalty of 20 pounds, a common-law rule has been established having force and effect under our practice. It is pointed out by appellees in this connection that the statute 4th and 5th, William and Mary, chapter 11, referred to, had reference to criminal proceedings, and because of the fact that quo warranto is no longer considered a criminal proceeding, but is to be treated as a civil proceeding, that the statute 4th and 5th, William and Mary, has no application to the proceeding of quo warranto as it now exists in this jurisdiction.

With this view of the matter we are disposed to agree, and we therefore hold that the failure to require a bond of the relator in a proceeding on an information in the nature of quo warranto, if erroneous, does not amount to

prejudicial error where, after judgment of ouster against the respondents, such judgment is affirmed on appeal.

[6] Appellants further contend that the district court of Bernalillo county was without jurisdiction to try the case, basing their contention in this respect upon the ground that informations in the nature of quo warranto are criminal as to matters of pleading and jurisdiction, for which reason the district court of Luna county alone had jurisdiction of the respondents, or of such of them as resided there. Mr. High, in his work on Extr. Leg. Rem. (3d Ed.) § 591, says:

"The object of the information, as now employed in the courts of England and America, is substantially the same as that of the ancient writ of quo warranto, and while still retaining its criminal form, it has long since come to be regarded, in substance, as a civil proceeding, instituted by the public prosecutor, upon the relation of private citizens for the determination of purely civil rights."

We therefore find no merit in the contention that the district court of Bernalillo county was without jurisdiction.

[7] It is also contended that an information in the nature of quo warranto must be drawn with the certainty of an indictment. In this contention, however, appellants are again in error. The rule is thus announced by Spelling (2d Ed.) Inj. and Other Extra. Rem. § 1846:

"Such actions should, in most of the states, be commenced and prosecuted like other civil actions, and are governed in respect to the pleadings by the same rule."

This author, after pointing out the few jurisdictions which have a different rule, further says:

"With these exceptions, it is thought the principles of good pleading will be found to apply to both parties, as in other actions."

Again, this author, in section 1852, says:

"Where a number of individuals assume to act as a corporation, an information containing a general denial of their right to do so will be sufficient to put them to their plea of justification."

Likewise it has been held that a proceeding by information in the nature of quo warranto is usually subject to amendment, it being a civil proceeding, criminal in form only. State v. Gleason, 12 Fla. 190. We therefore conclude that an information in the nature of quo warranto, while criminal in form, need not be drawn with the certainty required of indictments, but that the principles of good pleading will apply to both parties as in ordinary civil actions.

[8] The next proposition submitted for our consideration is that the trial court did not acquire jurisdiction of the person of Luis Huller by any method known to the law. It appears that the trial court overruled motions to quash and a plea to the jurisdiction of the court, which alleged that seven of the respondents were not residents of the state of New Mexico and had not been served with process and had not entered their appearances. Six of these individuals, who were respondents, pleaded over with pleas in bar before Luis Huller filed his plea in abatement under a so-called special appearance, setting up that he was a citizen and resident of Mexico, and that process had not been served upon him personally. It is contended that he denied the jurisdiction of the court over his person by a properly verified plea raising issues of fact, which should have been and were not determined. This appellant, Luis Huller, contends that the plea in bar filed after the special appearance and plea to the jurisdiction of the person, which was erroneously overruled by the court, and a rule being entered against the pleader to plead in bar, does not waive a plea to the jurisdiction upon appeal, if the pleader is unwillingly forced to plead and does so objecting, protesting, and excepting to the order of the court compellng him to plead in bar or stand in default. Other contentions are made which we do not deem it necessary to set out.

By appellees it is contended that any one who desires to appear specially, for the purpose of objecting to the jurisdiction of the court over his person, must do so without raising any question of jurisdiction over the subject-matter, or any question concerning the cause of action in the

complaint or information, or any other question which goes to the merits of the action as distinguished from jurisdiction of the person. The rule of common-law pleading is thus set out in Coke's Lit. 305:

"I. In good order of pleading, a man must plead to the jurisdiction of the court. II. To the person; and therein (1) to the person of the plaintiff and then to the person of the defendant. III. To the count; and IV. To the writ; V. To the action, etc. Which order and form of pleading you shall read in the ancient authors agreeable to the law at this time, and if the defendant misses order in any of these he loseth the benefit of the form."

It appears that Mr. Luis Huller joined in the motion to quash the service, and in a motion to vacate the order of the trial court allowing service upon an alleged agent for service of process, and the motion to quash the information and in the alternative to strike it from the files. Each of these appearances was denominated a special appearance; but the question naturally arises as to whether the appearance was in fact a general one and not a special appearance. This court, held, in the case of Dailey v. Foster, 17 N. M. 377, 128 Pac. 71, that:

"Whether the appearance is general or special is governed by the purpose and object of the appearance. If the appearance be for the purpose of objecting to the jurisdiction of the court and is confined solely to the question of jurisdiction, then the appearance is special, but any action upon the part of the defendant, except to object to the jurisdiction which recognizes the case in court, will amount to a general appearance." Citing 3 Cyc. 504.

Under this rule, as heretofore announced, it must be evident that this respondent has entered a general appearance, for by the several appearances, though denominated special, he has brought into question matters other than the jurisdiction of the court. These pleadings are somewhat lengthy and we will not consider them in detail.

We believe the first objection to the position of this respondent is that his several pleadings show that he raised questions of fact not going to the jurisdiction of the court, the first being that the writ was not served upon the respondent, but upon one Arthur Temke, who was not and

never had been a resident agent of the respondent. It was next urged that the writ should be issued in the name of the state of New Mexico, whereas it appears to have been issued upon the order of the court. It was also contended that by the statute of the state service of summons must be made by delivering a copy of the process or papers to be served on defendant, or, in case of the defendant refusing to receive such copy, the service should be made by delivering a copy to some person residing at the usual place of abode of the defendant, and if such person be not found, then that service should be made by posting copies in some public place on the defendant's premises. These several grounds were set out in a motion to vacate an order allowing service upon the resident agent Temke. The other grounds of the motion attacked the jurisdiction of the court over the cause of action. The same grounds were also urged by the respondent Huller in support of a special appearance and motion to quash service. Subsequently Huller and others joined in a motion to quash the information or to strike the same from the files, setting out first, that the court had not authority in law to entertain an information in the nature of quo warranto; that, while an information upon the relation of a private person or corporation cannot be filed without leave of court, no leave was given to file such an information, and that the information is filed under the name of a private relator and not in the name of the state; that the court had no jurisdiction unless the purpose of the proceeding was to inquire into the right or to redress a wrong concerning the state. It was also contended that the leave given to file the information was on behalf of the state, whereas the proceeding was brought by private attorneys without competent authority to represent the state; that the Attorney General was without authority to waive the Constitution and give his consent to a private corporation or person to bring suit on the relation of the state, or to delegate his official duties to private parties; that the said information is a different information than that which the petitioner asked leave to file; that the relator seeks judgment of ouster against respondents for alleged usurpation of privi-

leges, liberties, and franchises not created or recognized by the state; that the verification was made by one not authorized by law to make the same.

It thus becomes evident that again this respondent raises questions not pertaining to the jurisdiction of the court over the cause of action, and by so doing must necessarily be held to have entered a general appearance in the cause.

This court also held, in the case of Charles F. Fowler v. Con. Cas. Co., 17 N. M. 188, 124 Pac. 479, that:

"When a party moves to set aside a default and judgment upon the ground that the court had no jurisdiction over its person because there has been no valid service of summons, it must occupy that ground exclusively. * * *"

Clearly the respondent, by his motion to vacate the order of the trial court entered on the 16th day of April, 1914, and by his subsequent motion to quash service, set out grounds other than jurisdictional, and must be held to have entered a general appearance in the cause.

Our conclusion in this respect makes it unnecessary for us to consider the point raised by appellee that this respondent subsequently entered a general appearance by joining in the demurrers and other pleadings filed by his associate respondents.

[9] The relator was given judgment of ouster upon a motion for a judgment on the pleadings, and it is contended that because there were issuable facts to be determined and because the respondents' pleas constituted a justification, that the court fell into error in granting the prayer of the relator for a judgment on the pleadings The pleadings in this case cover over 200 pages of the record, and it is impossible to thoroughly discuss this contention.

Mr. High in his work on Extra. Leg. Rem. at section 718, in this connection says:

"From the nature of the quo warranto information for the usurpation of an office or franchise, which calls upon the respondent to show by what warrant he exercises the functions of the office, it follows of necessity that non usurpavit, or a simple plea of not guilty, does not constitute a sufficient

plea, since it discloses no title to the office, which is the very gist of the controversy."

The same author, at section 661, says:

"If, however, the action is instituted against individuals, charging them with usurping the privileges and franchises of a body politic and corporate, it is not a sufficient return by such respondents to show the act of incorporation, and that they own a portion of the capital stock of the company, being members thereof, and that as such members in connection with other members they have exercised the franchises in question. In such case the returns should also show that the respondents are empowered by the corporation to do the acts in question, and that their action is binding and obligatory upon the corporation itself, since otherwise it is merely their individual action."

At section 716, this author further says:

"When the proceedings are instituted for the purpose of testing the title to an office or franchise, the proper course for a respondent is to either disclaim or to justify. If he disclaims all right to the office, the people are at once entitled to judgment as of course. If, upon the other hand, the respondent seeks to justify, he must set out his title specially and distinctly, and it will not suffice that he alleges generally that he was duly elected or appointed to the office, but he must state specifically how he was appointed, and, if appointed to fill a vacancy caused by the removal of a former incumbent, the particulars of the dismissal as well as of the appointment must appear. The people are not bound to show anything, and the respondent must show on the face of his plea that he has a valid and sufficient title, and, if he fails to exhibit sufficient authority for exercising the functions of the offce, the people are entitled to judgment of ouster."

In 32 Cyc. p. 1454:

"An information in quo warranto is sufficiently answered by a plea which sets out all material facts relative to the questions properly raised by the infirmation; but a plea is insufficient if it contains nothing upon which a material issue can be formed, and in such case judgment may be rendered on the record, without any evidence being introduced."

In 32 Cyc. p. 1455, is also the following:

"To a quo warranto charging an illegal exercise of corporate franchises, the plea should as a general rule be either of justification or a disclaimer, and the plea of justification must contain allegations of all facts as are necessary to show authority for the use of the franchises."

With these statements of principle in mind, we turn to an inquiry concerning the propriety of the action of the trial court in sustaining a motion for judgment on the pleadings. Clearly the question before the trial court was whether the respondent had justified or had failed to do so. All the respondents did not join in the same answers. It appears that respondents admit that there were issued by them some certificates of stock in the name of the relator, that they held a meeting, but that they denied ever having had control of the record, seal, or stock certificate book. They deny that they fraudulently created a seal, record, or stock certificate book, but they fail to set out the facts justifying the validity of their acts in these respects. Generally speaking, respondents seem to largely rely upon the fact that because Luis Huller, now deceased, was at one time the owner of practically all of the stock of relator corporation, and that he died possessed of such stock, which came into the hands of his administrators, that the burden of the responsibility to prove that he had parted with ownership in this stock was shifted to the relator. In this, respondents have lost sight of the fact that the burden rests upon them at all times to justify their alleged acts of usurpation. There is no doubt concerning the right of the owner of the stock in any corporation to become registered as such upon the books of the corporation and to compel such registration if he is entitled thereto. It does not appear that the respondents, or either of them, except Haskell, who was admitted to be the owner of 1,000 shares, were registered as stockholders, or that they sought registration. They seemingly elected to issue new shares of stock, under new seal, pursuant to authority of the board of directors organized by them, and to set up a rival corporation thereby, without establishing any claims that they may have had.

The manner in which Luis Huller, deceased, parted with his stock is set up in the pleadings by incorporation therein of two certain contracts entered into by Luis Huller, deceased. These contracts show that Luis Huller, deceased, recognized ownership of the stock in one Sisson, by virtue of the contract of July 6, 1889, and thereafter recognized

the title to the same stock by virtue of the contract of February 19, 1890, in one Faurot. The rejoinder of S. Lindauer admits that the contracts in question were entered into, but denies that the said Faurot was the holder of said stock, other than 5,009 shares, as security for sums of money previously loaned and advanced to the said Huller. Appellants or respondents contend that their pleadings specifically set forth the ownership of the shares of stock of the corporation. They say that Luis Huller was the original owner of the shares of stock; that he did not at any time transfer or dispose of such shares of stock so owned by him, and that he died the owner of all such stock, except the 5,009 shares referred to. They attempt justification upon the ground that Luis Huller, one of the respondents, as administrator and executor, is the owner and holder of such shares of stock originally issued to his father, Luis Huller, and that, because of these allegations made under oath, the relator, by its motion for judgment on the pleadings, necessarily admits the truth thereof, and cannot be heard to deny them.

It is to be borne in mind, however, that the pleadings of the relator point out how Luis Huller, Sr., parted with the stock in question under the contracts referred to, and it would seem to be clear that the statement of facts thus brought to the attention of the court would necessarily require something more than denial to relieve the respondents of their legal duty to justify. It is not enough for the respondents to say that they are the owners of the stock in the corporation, when their stock in question is shown by contracts incorporated in the pleadings to be owned by others, and respondents did not meet their full responsibility in the matter by justification of this character. We therefore conclude that the motion of the relator for judgment on the pleadings was properly granted.

It is next urged that the court committed error in not granting the demand of the defendants for a jury trial. There is considerable doubt in our minds as to the right of the respondents to demand a trial by jury in any event, but we are not called upon to enter into the merits of the question, because, even though the right existed, if there

is no question of fact to be submitted to the jury and the court was correct in its ruling on the motion for judgment on the peladings, the respondents would not be entitled to a jury trial, and cannot be heard to complain of this error assigned.

It is next urged that the appellee in the trial court contended that the proceeding is authorized by the statute of Anne, for which reason it cannot now be permitted to shift its position and contend for affirmance on any other theory of the pleadings. Having sustained appellees' contention as to the statute of Anne having application to the facts in this case, this assignment becomes of no consequence.

The concluding portion of the brief of appellants is devoted to a discussion of the charges of conspiracy and of false and fraudulent acts contained in the information. The discussion is general and has application to different assignments of error, which have already been considered and disposed of. It is also argued that the district court, in sustaining relator's motion for judgment on the pleadings, ignored and did not consider matters of record, and judgment was rendered upon consideration of partial pleadings and matters of record in this case only. We have considered the action of the trial court in sustaining the motion for judgment on the pleadings and have found no error in its action thereupon. We therefore conclude that the judgment of the lower court should be affirmed, and it is so ordered.

PARKER, J., concurs.

ROBERTS, J. (dissenting. In setting forth the reasons for my dissent I deem it advisable to state the facts more fully than they are set forth in the majority opinion.

On the 16th day of March 1914, there was filed in the office of the clerk of the district court of Bernalillo county a petition for leave to file information in the nature of quo warranto. The petition was entitled "In the matter of the petition of the Northwestern Colonization & Improvement Company of Chihuahua for leave to file information in the nature of quo warranto," and recited:

"Comes now the Northwestern Colonization & Improvement Company of Chihuahua and respectfully petitions the court for leave to file information in the nature of quo warranto, and for grounds of petition gives the court to be informed as follows."

It then represents that the action is brought by and with the consent of the Honorable Frank W. Clancy, Attorney General of the state of New Mexico; that the Northwestern Colonization & Improvement Company of Chihuahua is a corporation organized under the laws of the territory of New Mexico in 1889, and has since existed as such; that the board of directors and the officers of the corporation are as named therein; that the office of such corporation in the state of New Mexico is in the city of Albuquerque, and outside of said state, in the Garfield Building, Cleveland, Ohio, and that there is no other corporation by that name within the state of New Mexico.

The petition then proceeds:

"Your petitioner further represents on information and belief that certain persons, to-wit, Luis Huller, whom petitioner is informed is a citizen of the republic of Mexico, William J. Cox, a citizen of the state of Texas, S. Lindauer, a citizen of Deming, N. M., S. D. Haskell, a citizen of the state of Illinois, Harvey A. Basham, Thomas Fitzhugh Lee, Geo. W. Johnson and Miguel Grub, citizens of the republic of Mexico, and also one Walter D. Hawk, a citizen of the state of Illniois, all conspiring together with one George R. Pierce, since deceased, undertook to act together, and to exercise corporate functions in the name and pretending to be in behalf of the said the Northwestern Colonization & Improvement Company of Chihuahua, and said persons, or some of them, caused to be published a notice pretending to be in behalf of petitioner in a newspaper published in the town of Deming, N. M., attempting to call a meeting of the stockholders of petitioner for the 14th day of December, 1910, and said parties, or some of them, in pursuance to said notice, together with said Walter D. Hawk and Arthur A. Temke, met at a hotel in the town of Deming, N. M., on said date, and pretending, or some of them pretending, to be stockholders of petitioner, held a meeting and claim to have elected the said persons, except Hawk and Temke, as directors of said petitioner, and said pretended stockholders at said meeting caused minutes of said meeting to be made and afterwards entered in a book as minutes of the said corporation, and so pretending to be stockholders elected George R. Pierce president, and said Luis Huller secretary of said corporation, and passed a resolution authorizing the directors so pre-

tended to have been elected to meet in the city and republic of Mexico for the purpose of transacting business as a corporation organized under the laws of New Mexico and in the name of your petitioner, and doing other acts in the name of petitioner, and caused to be issued certificate or certificates of stock in the name of petitioner with the name of petitioner engraved thereon, and also caused to be executed certain false statements or certificates appointing Arthur A. Temke the resident agent, upon whom service of summons could be served whenever process may be issued against petitioner, and caused such certificates to be filed with the state corporation commission of the state of New Mexico at its public office in the city of Santa Fe, and likewise assuming to exercise corporate powers in the name of petitioner caused to be issued certain false and fraudulent power or powers of attorney to Jeorge Vera Estañol, to Burton W. Wilson, and to Romulo Becerra, purporting to authorize said attorney in fact to appear in certain proceedings pending in the courts of the republic of Mexico and to represent themselves as attorneys to act for and in behalf of petitioner, the Northwestern Colonization & Improvement Company of Chihuahua; that the said Walter D. Hawk pretends to represent, without right and without any valid authority, as attorney at law, the Northwestern Colonization & Improvement Company of Chihuahua, by virtue of alleged authority which he received, or pretends to have received, from the said Luis Huller, or from the said other persons at the meeting so held at the town of Deming, N. M., December 14, 1910, or at some other time or place, and has attempted to delegate his said pretended authority to other attorneys at law to act in the name of said corporation."

The petitioner, after setting out the supposed conspiracies, claims, and pretenses of respondents, alleged respondents have usurped said "offices, liberties, privileges, and franchises, and authority" upon said corporation and the state of New Mexico, and have exercised and assumed to exercise them, without being legally authorized so to do, to the great damage and prejudice of said corporation and the state, and concludes with a prayer by the petitioner alone that respondents be required to show cause why leave to file an information in the nature of quo warranto in behalf of said state at the relation of said petitioner should not be granted. The petition was signed by private counsel as attorneys for the petitioner.

An order to show cause was issued upon said petition, which with a copy of said petition, was personally served in Luna county, upon the respondent Lindauer and upon

Arthur A. Temke, as alleged resident agent of the company, under an order of court dated March 16, 1914, directing service so to be made, and directing that such service upon Temke should be sufficient service to bring said respondents, acting as a pretended board of directors of said company, except respondent Lindauer, into court.

Upon the return date of said order to show cause, a demurrer to the sufficiency of the petition for leave to file the information was filed by S. Lindauer and Arthur A. Temke. This demurrer was overruled, and leave granted to file the information on April 16, 1914.

On April 10, 1914, there was filed in the clerk's office of said court a letter from Frank W. Clancy, Attorney General, to "Mr. D. J. Cable, Secretary of the Northwestern Colonization & Improvement Company of Chihuahua," purporting to give the consent of said Clancy to the bringing of quo warranto proceedings in the name of the state of New Mexico ex rel. the said company against Luis Huller and nine others. Upon April 16, 1914, there was filed an information in the nature of quo warranto against the said respondents, substantially in the same form as the petition, except that the same was entitled in the name of the state of New Mexico ex rel. the Northwestern Colonization & Improvment Company, and usurpations were alleged to have been upon the state alone. The word "office" was omitted, and the verification was made by James R. Garfield, as vice president of the relator.

Thereupon, on the same day, an order or citation entitled in the same form as said information and as a summons, and reciting the filing of said information, issued out of said district court, addressed to the said respondents, and commanding them under penalty of the law and pain of judgment to appear at 10 o'clock a. m., on June 1, 1914, before said district court, there to answer said information; which said order had the seal of said court impressed thereon and was signed, "H. F. Raynolds, District Judge, etc."

An order for service was indorsed on said last-named order, reciting that, as it appears Arthur A. Temke has been appointed by respondents their resident agent for

service of process, "it is ordered that service of this summons be served upon said Arthur A. Temke, and shall be service upon the respondents (naming them). H. F. Raynolds, District Judge etc." And service was thereupon had on Temke and Lindauer in Luna county.

In response to such service, the respondents, other than said Lindauer, appearing specially for that purpose, or at least attempting to do so, filed their motions respectively: (1) To quash the return of the sheriff of Luna county upon said order or citation and vacate the order authorizing such service on said Temke; (2) to quash said information or strike the same from the files of the court, and (3) to vacate the order indorsed on said citation; and the said Lindauer also appearing specially for that purpose filed his plea to the jurisdiction of the court and a plea in abatement of said citation or summons, all of which motions and pleas were overruled by the court. Thereafter various demurrers and pleas were filed by the respondents, some on judisdictional grounds and others to the merits, to which the relator filed replications. Demurrers were filed by respondents to the replications, or at least by some of the respondents, which were overruled, and thereupon rejoinders were filed. To the rejoinders the relator filed a paper denominated a surrejoinder, setting up as exhibits two certain contracts, and praying that the court construe the same. There were so many different pleadings, demurrers, motions, etc., filed in the case by the various parties, that it would unduly lengthen this statement of facts to give in detail the history of the pleadings. It will suffice to say that down to and including the filing of the rebutter, the respondents arranged themselves as follows: (a) The respondent Haskell stood upon the demurrer to the original information in the nature of quo warranto and refused to further plead; (b) the respondent Johnson stood upon the demurrer to the replication and his motions for judgment upon the pleadings, and refused to further plead; (c) the other respondents filed pleas down to and including their rejoinders.

The cause was set down for trial on June 1, 1915, upon which date, or shortly thereafter, the relator elected to

file a motion for judgment upon the pleadings, which motion was sustained, and final judgment of ouster was entered thereon upon the pleadings filed by the relator, for and in behalf of the state of New Mexico, from which judgment of ouster the respondents prayed this appeal.

The first question with which we are confronted is the action of the court in overruling the motions interposed by certain of the respondents to quash service. That the method employed in obtaining service upon the non-resident respondents was illegal and void hardly requires discussion. The relator was proceeding against the respondents as individuals and alleged that they were not directors of the corporation and had no connection therewith, but were usurpers and intruders. In view of these allegations and of the relief sought, it could hardly be contended that the service of summons upon an individual, designated by these alleged usurpers as resident agent of the corporation, for the purpose of accepting service upon the corporation and the directors and officers of the corporation, as such, would be effectual to bring the individuals legally before a court in an action of this kind.

Sections 932 and 934, Code 1915, which require a corporation to designate a resident agent upon whom process against the corporation may be served, and which provide:

"And whenever by the provisions of any law of this state notice is required to be given to the corporation, its officers, stockholders or directors, such notice shall be sent by mail or otherwise, as the law may require, to such registered office, and such notice so given shall be deemed sufficient notice"—

does not authorize service of process upon a supposed agent alleged to have been designated as such by parties who have usurped and intruded into the offices of directors of such corporation, or to have usurped franchises of the corporation in an action by information in the nature of quo warranto against such individuals to oust them from the exercise of such offices and franchises. Indeed, these sections provide no warrant whatever for the service of process upon individuals who may be directors of a corporation, and, as such, have designated an agent of the corpor-

ation upon whom service of process against the corporation may be had, where the action is against such directors or other officers of the corporation in their individual capacities, and not as directors or officers of the corporation.

Appellee contends, however, that if the service should be defective that appellants have entered a general appearance in the case, and that they are bound by the judgment.

Appellants admit that as to all of the respondents save Huller the appearance was general, or, to say the least, they do not contend that the remaining respondents have not generally appeared. It is strenuously insisted, however, that the court never acquired jurisdiction over Luis Huller, and while I am inclined to agree with this contention I shall not discuss the question at length. Huller, with others, filed, first, a motion to quash the return of the sheriff; second, a motion to vacate the order made ice upon respondents; and, third, a motion to quash the information or in the alternative to strike it from the files.

In these various motions two questions were raised: First, jurisdiction of the court over the subject-matter; and, second; jurisdiction over the person. The rule of April 16, 1914, allowing service upon Temke to be servpleading at common law and the orders in which the pleas may be made are: (1) To the jurisdiction of the court. (2) To the persons: (a) Of plaintiff; (b) of defendant. (3) To the count. (4) To the writ therein: ( a) To the form of a writ; (b) to the action of a writ. (5) To the action itself in bar thereof.

By this order of pleading each subsequent plea admits the former; as when the defendant pleads to the person, he admits the jurisdiction of the court. When he pleads to the count he admits the competency of the plaintiff and his responsibility. When he pleads to the form of the writ he admits the form of the count and in like manner of the rest. 1 Tidd's Practice, 630.

Here Huller joined in the same plea questions relating to the jurisdiction of the court over the subject-matter and jurisdiction over the person. By so doing he doubtless waived the question of jurisdiction of the court over the subject of the action, but I do not believe that it can be

maintained, with any degree of logic, that he waived the question of jurisdiction of the person.

Nor did he waive this jurisdictional question by pleading to the merits when forced to do so by the overruling of his jurisdictional pleas. This question is settled by decisions of the Supreme Court of the United States. See Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565.

Before giving consideration to what I deem the decisive question in this case, it is necessary to determine the nature and purpose of this proceeding. In the district court appellee insisted that the action was instituted under the provisions of 9th Anne, chapter 20, which has been held to be a part of the common law adopted in this jurisdiction by section 1354, Code 1915. While cognizant of the fact that many of the state courts have held that this statute was no part of the common law of England, and was not a part of the law of such states, by virtue of the adoption by such states of the common law of England as the rule of practice and decision, still the rule has been so long established and so consistently adhered to in this state that it would be unwise, at this late date, to enter upon a reinvestigation of the question. Hence I shall accept the repeated declarations of both the territorial and state Supreme Courts, that such statute is a part of the common law adopted by the statute above referred to as settled law.

By 9 Anne, c. 20, § 4, it is enacted:

"That in case any person or persons shall usurp, intrude into, or unlawfully hold and execute the offices of mayors, bailiffs, portreeves, or other offices within cities, towns corporate, boroughs, or places in England or Wales, or into the franchises of being burgesses or freemen of such cities, towns corporate, boroughs or places, it shall and may be lawful to and for the proper officer of the Court of Queen's Bench, the courts of sessions of counties palatine, or the court of grand sessions in Wales, with the leave of the said courts respectively, to exhibit one or more information or informations in the nature of quo warranto, at the relation of any person or persons desiring to sue or prosecute the same, and who shall be mentioned in such information or informations to be the relator or relators against such person or persons so usurping, intruding into, or unlawfully holding

and executing any of the said offices, or franchises, and to
proceed therein in such manner as is usual in cases of infor-
mations in the nature of a quo warranto; and if it shall
appear to the said respective courts that the several rights
of divers persons to the said offices or franchises may prop-
erly be determined on one information, it shall and may be
lawful for the said respective courts to give leave to exhibit
one such information against several persons, in order to
try their respective rights to such offices or franchises; and
such person or persons, against whom such information or
informations in nature of a quo warranto shall be sued or
prosecuted, shall appear and plead, as of the same term
or sessions in which the said information or informations
shall be filed, unless the court where such information shall
be filed shall give further time to such person or persons,
against whom such information shall be exhibited, to plead;
and such person or persons, who shall sue or prosecute such
information or informations, in the nature of a quo warranto,
shall proceed thereupon with the most convenient speed that
may be."

And it is further enacted (section 5):

"That in case any person or persons, against whom any
information or informations in the nature of a quo warranto,
shall in any of the said cases be exhibited in any of the
said courts, shall be found or adjudged guilty of a usurpa-
tion or intrusion into, or unlawfully holding and executing
any of the said offices or franchises, it shall and may be
lawful to and for the said courts respectively, as well to
give judgment of ouster against such person or persons of
and from any of the said offices and franchises, as to fine
such person or persons respectively for his or their usurp-
ing, intruding into, or unlawfully holding and executing any
of the said offices or franchises; and also it shall and may
be lawful to and for the said courts respectively to give judg-
ment that the relator or relators in such information named
shall recover his or their costs of such prosecution, and if
judgment shall be given for the defendant or defendants
in such information, he or they, for whom such judgment
shall be given, shall recover his or their costs therein ex-
pended against such relator or relators: such costs to be
levied by capias ad satisfaciendum, fieri facias, or elegit."

A writ of quo warranto was in the nature of a writ of
right for the king, against him who claimed or usurped
any office, franchise, or liberty, to inquire by what author-
ity he supported his claim in order to determine the right.
Little is known of its origin, but that it was employed in
the English courts centuries ago is not to be doubted,
because in the earliest English Reports we find cases where-

in it was employed and the right was not questioned. Likewise, there is no historical certainty as to the origin of the remedy by information in the nature of quo warranto. That the writ was employed long prior to the statute of Anne is not doubted. Such an action, however, was always, I believe, instituted by the Crown attorney, or on his relation, and a private relator was never admitted to institute the suit. That the procedure was different in many respects between the common-law action by information in the nature of quo warranto and the procedure under the statute of Anne is not subject to question. The former, as stated, was always instituted by the Crown attorney, and this without leave of court, and as a matter of right; the latter could only be filed by leave of court first had and obtained. A private relator was unknown in the former proceedings, had no control over the cause, and if his name was added it was regarded as surplusage.

Prior to the statute of Anne the information in the nature of quo warranto was employed exclusively as a prerogative remedy to punish a usurpation upon the franchises or liberties granted by the Crown, and it was never used-as a remedy for private citizens desiring to test the title of persons claiming to exercise a public franchise. And although such informations were exhibited by the King's Attorney General long before the enactment of the statute, yet the remedy thereby given was never enlarged beyond the limits prescribed for the original writ of quo warranto, which extended only to encroachments upon the royal prerogative. High's Ex. Leg. Rem. § 602. The employment of the information in the nature of quo warranto, between parties, was unknown prior to the statute of Anne. as a means of investigating and determining civil rights

The usurpation of a right of franchise upon the Crown concerned the Crown alone, and whether the party so usurping should be ousted or permitted to continue and enjoy the franchise was a matter resting solely with the king, hence a private individual was never permitted to interfere or intrude in such matters as concerned the king alone. Whether the suit should be filed to oust such person from such franchise or claimed right rested solely

with the Crown attorney, and leave of the court was never required.

Notwithstanding the fact that relator framed its pleadings and proceeded in the trial court upon the theory that the action was instituted under the provisions of the statute of Anne, and counsel so stated to the trial court, it is here contended that this cour should uphold the action of the trial court, upon the theory that the suit was instituted by the Attorney General, upon his own relation, for the purpose of ousting respondents from the exercise of franchises and privileges which they are usurping upon the state, and that we should disregard the relator named in the proceedings, and sustain the judgment of ouster. Hence the first question to be determined is whether the petitioner should be held to the theory of the case adopted in the court below. That we must do so is readily apparent, unless this case comes within the exception to the general and well-established rule that the case on appeal must be decided on the same theory on which it was tried in the court below. 2 R. C. L. p. 183; 4 C. J. pp. 661, 662; Cadwell v. Higginbotham, 20 N. M. 482, 151 Pac. 315. The exception to the rule is thus stated in 4 C. J. 662:

"But, as shown, there are exceptions and limitations to this rule, and it is clear that the appellate court is not necessarily restricted to the theory on which the lower court proceeded, but may review any error apparent on the record and base its affirmance or reversal on a different theory or on different grounds, provided the question involved was properly before the court."

Here the relator refuses to definitely plant its feet upon either theory. It neither takes the position that the proceeding was instituted under the statute of Anne nor under the common-law proceeding by quo warranto or information in the nature of quo warranto. It says:

"If the proceeding could not be instituted under the statute of Anne, it could under the common-law writ of quo warranto or information in the nature of quo warranto; if the relator named could not be a relator or if the proceeding could not be instituted by a private relator disregard the relator and treat the naming of the one as surplusage, and sus-

tain the judgment upon the theory that the cause was instituted by the Attorney General on behalf of the state."

The manifest infirmity of this contention is that the proceeding was not instituted by the Attorney General on behalf of the state, or on his relation, but was instituted by a private relator, with his consent. This consent first appears by a letter filed in the district clerk's office, written by the Attorney General to private counsel of the relator, in which he consents that the suit may be instituted on behalf of a private relator by the state, and permits the use of his name and the name of the state. This was necessary in a proceeding under the statute of Anne.

Again, from a perusal of the petition, it is apparent that relator is endeavoring to test the right of the respondents to usurp franchises and rights claimed by private parties, viz., the right of the "old board of directors" to exercise the rights and privileges claimed to be usurped and exercised by the respondents.

Assuming that the exercise, without right, of offices within a corporation, and the doing of acts affecting the rights of a corporation, or of its lawful board of directors, without right or authority, would be the usurpation of a franchise upon the state, it is clear that the state could proceed to reclaim these usurped franchises and rights, or refuse to do so, at its election and option. Private parties could not proceed in its name, or on relation, to reclaim them for the state, save under the provisions of the statute of Anne, or in some other mode authorized by statute.

The Attorney General did not, in this proceeding, attempt to reclaim them for the state. He did not, in his discretion, elect to institute the action. He merely gave his consent as the law officer of the state that the relator might institute the proceeding, and this the relator did, by leave of the court first had and obtained. It would present an anomalous situation if a private relator could obtain the consent of the Attorney General to the institution of proceedings by information in the nature of quo war-

ranto, upon the theory that he was interested in the supposed usurpation of an office or franchise within a corporation, and, when his lack of interest appeared, still sustain the proceeding upon the theory that because the Attorney General gave his consent to the institution of the proceedings the court should treat it as though it were a suit instituted by the state, or on relation of the Attorney General, and proceed to oust the intruders from usurping a franchise upon the state, which the state might have been willing to condone or overlook.

In the trial court respondents insisted from their first appearance that the cause could not be instituted or conducted under the statute of Anne; that such statute had no application. This question was raised by demurrers, motions, and the pleadings in the case, but despite their objections they were held strictly to the rule of procedure under the statute, and upon the theory that this statute applied, judgment of ouster was rendered upon the pleadings, it will be manifestly unfair to permit relator or the state to shift its position in this court, and to uphold the judgment, upon the theory that the cause was instituted by the state, or by the state upon the relation of its Attorney General, to oust the respondents from the usurpation of a franchise upon the state, when such was clearly not the case, and the state was not the moving party, but only consenting to the litigation of private rights affecting a corporation which it had created, or the right to exercise offices and franchises within such corporation.

An apt illustration of the injustice of such a holding is illustrated by the following examples: Suppose that A is exercising the duties of state auditor, either lawfully or without right; B secures the consent of the Attorney General that he may institute proceedings by information in the nature of quo warranto to test his right to the office. B files the suit and, upon issue joined, it appears that he has no interest whatever in the office, and is not even a citizen of the state. Could and would the court proceed with the cause and oust the incumbent upon the theory that the cause was instituted by the state, or by the state on the relation of the Attorney General? Assuredly not.

Because of the foregoing considerations I believe that
relator is bound by the theory of the case in the court be-
low, and shall therefore proceed to a consideration of the
same, upon the merits, and treat the suit as having been
instituted under the provisions of the statute of Anne.

In this case very able, learned, and elaborate briefs have
been presented by counsel on both sides, discussing many
questions raised by the appellants. To consider and decide
all the questions thus presented would require an unwar-
ranted expenditure of time, research, and labor, because,
in this jurisdiction, unfortunately, we have no legislative
enactment regulating the employment of the writ of quo
warranto or the information in the nature of a writ of
quo warranto, hence are relegated to the practice and pro-
cedure under the common law of England; assuming, nec-
essarily, that the statute of Anne was a part of the com-
mon law of that jurisdiction adopted here, as stated. Prac-
tically all of the American states have enacted statutes
upon the subject, many of them of different import and
providing a different rule of procedure; hence the decis-
ions of the state courts of this country fail to render
much assistance to a jurisdiction where the procedure is
still under the common law. Many of the questions
presented are novel and of first impression.

The first question which I shall consider is whether a
corporation can act as a relator in a proceeding by in-
formation in the nature of quo warranto, to test the right
of named individuals to act as its officers and directors,
or in its name to exercise franchises and rights which could
only be exercised by them were they de facto or de jure
officers of such corporation. Appellants state the proposi-
tion thus: "A corporation cannot act as a relator in in-
formation in the nature of quo warranto;" but I think this
question is a much narrower question than as thus stated.

While the appellee insists here that no question of office
in the corporation is involved, and by a skillfully worded
petition has sought to evade raising an issue as to the
right to offices within the corporation, still the acts and
doings charged against the respondents would have been
legal and valid and within their power, were such acts

done by them as officers of the corporation in fact. Hence the issue in this case, as probably it would be in every like case, was as to whether the respondents were de jure officers of the corporation. It is true the court held that the various pleadings filed by them failed to establish their title to the offices, but that could have no effect upon the primary question as to the right of the corporation itself to be the relator in such a proceeding. For, if it be conceded that a corporation could be a relator in an action to determine rival claims to its directorate, the agency through which it acts, and the very agency which puts it in as such a relator until it should appear from the pleadings that the respondents were officers de jure, then, logically, we would be required to go but a step further and hold that it could act as relator in such a case until it appeared from the evidence that the respondents had established their title to the offices or the right to perform the functions ,or execute the franchises which they were charged with usurping. This would mean, necessarily, that a corporation could in all cases act as a relator in such instances; for, when the evidence disclosed respondent's title, the case would be ripe for judgment or subject to dismissal, and a judgment for respondents would leave no relator in the case. In such a case, assuming that the respondents were the de facto or de jure directors of the corporation, the relator would be put into the case, as such relator, by the act of a pretended board of directors, which the court would be compelled to hold were not, in fact, either de jure or de facto directors; hence the act of the board in putting it in would not be the act of the corporation and would in no sense be binding upon the corporation. Therefore two very important essentials would be lacking, viz., there would be no informer, and no one responsible for costs.

I have found no reported case, and none has been cited by counsel on either side, where a corporation was put in as a relator in such a case as the one now before us for consideration. Appellants assert that no case is to be found, either in England or America, where a corporation has been permitted to act as a common informer, or as a

relator in a quo warranto proceeding.  Appellee has cited us to the case of Beverly v. City of Hattiesburg, 83 Miss. 621, 36 South. 74, wherein the right of the city to act as a relator in a quo warranto proceeding against a police captain or some minor city official was upheld.  In that case the court says:

'The relator in such proceeding need not ncessarily be an individual.  A municipal corporation empowered to sue and be sued may be the relator and, in the case before us, ought to be."

Whether the decision was influenced by a local statute does not appear, but certainly such a case stands on quite a different footing from the present one.

Further citation is made to the case of State ex rel. Kansas City, Mo., v. East Fifth Street Railway Co., 140 Mo. 539, 41 S. W. 955, 38 L. R. A. 218, 62 Am. St. Rep. 742, in which case the city sought to forfeit the franchise of a railway company.  The court said:

"A suit to enforce such forfeiture might be maintained by the municipality, and in its name the state may maintain quo warranto to enforce such forfeiture."

Other cases cited of similar import are State ex rel. City of St. Louis v. L. D. Co., 246 Mo. 619, 152 S. W. 67; City of Olathe v. M. & K. I. Ry. Co., 78 Kan. 193, 96 Pac. 42; State ex rel. Vilter M. Co. v. M., B. & L. G. R. Co., 116 Wis. 142, 92 N. W. 546; and State ex rel. Green Bay G. & E. Co. v. Minahan Bldg. Co., 141 Wis. 400, 123 N. W. 258.

The influence of local statutory enactments upon the above-cited cases is not readily ascertainable, but even assuming that they were not influenced thereby, and that such states still adhere to the common law rule of practice and decision in such cases, they afford no precedents for sustaining the right of a corporation to act as a relator in a suit to test the right of persons to exercise corporate functions in its name and behalf, where the right of the corporation to act as a relator is dependent upon whether such parties are rightly assuming to act for it; in other

words, where the right of the officers of the corporation to name it as a relator depended upon the determination of the issues which are presented, or which may be presented in the quo warranto proceedings which it institutes.

The present case is like unto a case wherein a city council might put the city in as a relator in a quo warranto proceeding to determine the questoin as to whether the city council so directing the city to appear as relator, was the de jure council, or whether others usurping the offices and pretending to act for the city were councilmen.

Appellee argues, however, that because the information filed by relator shows that respondents were not in office as directors of the company, and were mere pretenders to such offices, and because it shows that such respondents were without right, using a spurious seal of the company, and likewise a spurious minute book, and were pretending, without right, to represent the corporation, the information, with the corporation as a relator, was proper, and the majority opinion so holds.

While I entertain grave doubt as to the correctness of the majority rule in the United States to the effect that an information in the nature of quo warranto is the proper remedy to try title to offices in private corporations in the absence of a statute extending the remedy to such offices, and am inclined to believe that the Massachusetts doctrine is the correct one under the statute of Anne (Goddard v. Smithett, 3 Gray (Mass.) 116; Haupt v. Rogers, 170 Mass. 71, 48 N. E. 1080,) still if we proceed upon the assumption that the majority holding is the correct doctrine, the majority opinion in this case in my judgment is unsound. It holds if I correctly understand the language that a corporation is a proper relator in a case brought to determine the right of certain individuals to exercise "privileges and franchises in the corporation" and proceeds upon the assumption that if an individual holds himself out to the public as an officer or agent of the corporation, and, as such, pretends to transact business in the name of the corporation, without any right or authority whatever, that he is exercising a franchise of the corporation, and in which event an information may be

filed by the corporation as a relator to inquire by what right he does so. This statement of the law is inaccurate, as I shall attempt to show. In the first place, under the law, rights and privileges within the corporation can only be exercised by either de jure or de facto officers or agents of the corporation. In other words, before an act may be done on behalf of the corporation which binds it, it must be done by the officers possessed of authority to do the act. Here it is charged that the pretended board of directors elected at Deming filed a certificate appointing a resident agent; that it adopted a corporate seal for the corporation; that it appointed attorneys to represent it in the republic of Mexico, and did other like acts. These acts could only be done by the directors of the company, and, in order to be a director, the person pretending to act as such must be in possession of the office. If the acts in question were done by individuals not in possession of the offices through which only the acts could be lawfully done, the corporation would not be bound thereby, and no person would be in position to claim or assert any rights growing out of such action. There cannot be two individuals in possession of the same office at the same time, where, by law, only one individual can fill the office. Mechem on Public Officers, §§ 322 and 323. This being true, if the Deming board of directors was in possession of the offices, as such, necessarily the claimed Ohio directors were out of office and had no power to act for the corporation as such in any manner. This claimed board therefore would have no power to put the corporation in as a relator in this case. If the Ohio board had possession of the offices of directors at the time the suit was instituted, most undoubtedly the information would not lie, because, if they were so possessed of the offices of directors, necessarily this board was in possession and control of all the rights, privileges, and franchises of the corporation, and they could not bring an information in the nature of quo warranto against the Deming crowd for the purpose of testing their right to exercise the franchises of the corporation which the Deming crowd did not enjoy or possess. The majority opinion proceeds upon the assumption that

there may be usurpation of the franchises as distinguished from the office, and cites as authority for this view Mylrea, Attorney General, v. Superior & St. C. Ry. Co., 93 Wis. 604, 67 N. W. 1138, and People v. Thompson, 16 Wend. (N. Y.) 655. I have read both of these opinions with care, but failed to find a single word in either case supporting any such contention. I do not believe authority can be found, and certainly none is cited in the majority opinion supporting such view. Bouvier, vol. 2, p. 1299, defines a franchise as follows:

"A special privilege conferred by government on individuals, and which does not belong to the citizens of the country generally by common right."

The author quotes Kent's definition, which is:

'A certain privilege conferred by grant from government and vested in individuals."

And also gives Blackstone's definition, which is:

"A royal privilege or branch of the King's prerogative subsisting in the hands of a subject."

Nor is there support for the majority opinion in the statute of Anne, and certainly the position taken to be sound must find its support in this statute. In that statute it is said "that in case any person or persons shall usurp, intrude into, or unlawfully hold and execute the offices of mayors, bailiffs, portreeves, or other offices within cities, towns corporate, boroughs, or places in England or Wales, or into the franchises of being burgesses or freemen of such cities, towns corporate," etc., in which cases only the information may be filed. Without thorough investigation I take it that the franchise of being a freeman of a city refers to being an inhabitant of such city or town, or possibly it meant a freeholder as distinguished from a villien. A burgess was an inhabitant of the town; a freeman; one legally admitted as a member of the corporation; a qualified voter; a representative in parliament of a town or borough. Bouvier's Law Dict. 404. Regardless, however, of which definition we may accept

as the correct one, under the statute of Anne it will be seen that the right to exhibit the information in the nature of quo warranto, in so far as franchises were concerned, was limited to two instances, viz., the franchises of being burgesses or freemen "of such cities, towns corporate, boroughs or places," and if it be assumed that a person may exercise a franchise within a corporation without being in possession of the offices through which the franchises may be lawfully exercised, still an information in the nature of quo warranto would not lie because it is not given by the statute of Anne, under which the authority is derived. The reason given in the majority opinion quoting therefrom, is:

"To concede the contention that men associated for the purpose of usurping corporate functions or powers must be directors or officers either de facto or de jure of the corporation, in order to authorize an ouster by proceedings in quo warranto, would be to deny a remedy where perhaps none other might be adequate or available."

The mere statement of this proposition carries with it, in my judgment, its own answer. An information in the nature of quo warranto is a proceeding at law, and if it does not provide an adequate remedy for a wrong equity will afford the remedy. It is clear in my mind that in this case injunction was the proper remedy. According to the allegations of the petition, the respondents were intermeddling with the affairs of the corporation; they were issuing spurious powers of attorney and certificates, and doing other acts which might tend to embarrass the corporation, and all such acts were being done without right or color of authority to restrain which equity would extend its aid. Certainly if there was a remedy at law a court of equity would not assume jurisdiction.

As illustrative of my contention, suppose, for example, that John Smith was the legal, qualified, and acting clerk of the district court of Santa Fe county and in full possession of the office; that Peter Roe would set himself up in some office, rented or occupied outside the court house and should hold out to the public that he was the clerk of the district court, and should proceed to issue summons,

warrants, and other process; would it be contended for a moment that John Smith could institute proceedings by information in the nature of quo warranto to test out the right of Peter Roe to continue to so exercise such rights and privileges? Most assuredly not. John Smith's remedy would be by injunction.

For these reasons I cannot give my assent to the majority opinion, and while dissenting upon these grounds, I do not desire to be understood as concurring in the views expressed in the majority opinion upon points which I have not discussed.

### SYLLABUS BY THE COURT.

