FRANCIS LAVALLE

*v.*

THE PEOPLE *ex rel.* JOHN TROTTIER.

1. QUO WARRANTO—*what the commencement of proceeding by.* The filing of an information, in the nature of a *quo warranto,* without notice or leave, will not be regarded as the commencement of the suit. It will not be considered as commenced until leave of the court is obtained to file the information.

2. SAME—*of the summons.* The Practice act requires that the first process in all actions in courts of record shall be a summons, except when

special bail is required, which shall be returnable to the first day of the next term of court, unless ten days shall not intervene, in which case it shall be returnable to the first day of the succeeding term. The practice in *quo warranto*, in this respect, is the same as in civil cases, and the defendant is entitled to be summoned ten days prior to the first day of the term to which the writ is returnable.

3. SAME—*process and service to authorize default.* Where leave was granted to file an information, in the nature of a *quo warranto*, during term time, and a summons ordered to be issued, returnable to the same term, it was *held*, that a default taken upon the service of such summons was irregular and erroneous.

4. SAME—*sufficiency of information.* An information, in the nature of a *quo warranto*, which charged that the defendant "is unlawfully executing the duties and exercising the powers of supervisor of the village of Cahokia, etc., and that he hath since, etc., unlawfully executed the duties and exercised the powers of supervisor, etc., and received and enjoyed the emoluments thereof," was *held* entirely too indefinite and general, as it failed to charge the defendant with intruding into or usurping the office, or specify in what way he unlawfully executed the duties and exercised the powers of the office.

5. The same certainty that is required in an indictment is necessary in an information in the nature of a *quo warranto*, and therefore all the material facts constituting the offense must be precisely alleged, and not by way of argument or recital.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Mr. M. MILLARD, for the appellant.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a proceeding, in the nature of a *quo warranto*, against the appellant, as supervisor of the village of Cahokia, in the county of St. Clair.

It appears, from the record, that the information was filed in the office of the clerk of the circuit court of St. Clair county, on the 18th day of March, 1872, while the circuit court was in session; that the case was then docketed, and continued until the August term of the court. At the August

term it was continued until the October term, and at that term it was continued until the March term, 1873.

On the 21st day of March, 1873, being one of the days of the March term, the State's Attorney asked and obtained the leave of the court to file the information ; and the court then ordered that a summons issue to the appellant, returnable on the 31st day of March, 1873. The summons was served on the appellant on the 26th day of March. On the third Monday of the term, being the return day of the summons, the court ordered the appellant to answer by the fourth Monday of the term. On the fourth Monday of the term, appellant having made no answer, judgment was rendered against him by default.

It does not appear that any notice or summons was served upon appellant prior to the time that the State's Attorney obtained the leave of the court to file the information.

Numerous objections are urged against this record, but we do not deem it important to notice but two of them.

We do not think the mere filing of the information in the office of the clerk, and having the case docketed and continued from term to term, without previous notice to the appellant, and without having obtained the leave of the court to file the information, can, in any correct sense, be regarded as the commencement of the suit. We are not aware of any law which authorized the suit to be thus commenced. We do not consider that the suit was commenced until the 21st day of March, 1873, when the court granted leave to file the information, and ordered the summons to be issued. When this was done the present Practice act was in force, which requires, by section one, that the first process, in all actions in courts of record in this State, except in actions where special bail shall be required, shall be a summons, which shall be returnable to the first day of the next term of the court, unless ten days shall not intervene, in which case it shall be returnable to the first day of the succeeding term, and provides, by section ten, that it shall not be necessary, hereafter, in any action

of *mandamus* or *quo warranto*, to set out the cause of action in the writ, but it shall be sufficient to summon the defendant in a summons in the usual form, commanding the defendant to appear and answer the plaintiff in an action of *mandamus* or *quo warranto*, as the case may be; and the issue shall be made up by answering, pleading or demurring to the petition, as in other cases. .We think the only reasonable construction that can be placed upon these sections is, that proceedings by *mandamus*, and in the nature of *quo warranto*, are to be commenced in the same way as civil actions are, and that the defendant is entitled to be summoned ten days prior to the first day of the term to which the writ is returnable, as in civil cases. In this view of the law, the judgment by default against the appellant was erroneous.

The information filed, charges that the appellant "is unlawfully executing the duties and exercising the powers of supervisor of the village of Cahokia, in St. Clair county, and that he hath, since the first day of March, 1870, unlawfully executed the duties and exercised the powers of supervisor of the village of Cahokia, and received and enjoyed the emoluments thereof." This is entirely too indefinite and general. The office is not one created by a general law, applicable to all the villages of the State. It is local, and peculiar to the village of Cahokia. We have been unable to find any statute which charges the courts of the State with judicial knowledge of the existence and duties of this office. But, even if the courts were bound to judicially take notice of these facts, the information neither charges the appellant with intruding into or usurping the office, nor specifies in what way he "unlawfully executed the duties and exercised the powers" of the office.

Hawkins says, 2 Pleas of the Crown, 357, sec. 4: "An information differs from an indictment in little more than this, that the one is found by the oaths of twelve men, and the other is not so found, but is only the allegation of the officer who exhibits it. Whatsoever certainty is requisite in an indictment, the same at least is necessary also in an informa-

tion, and consequently, as all the material parts of the crime must be precisely found in the one, so must they be precisely alleged in the other, and not by way of argument or recital." See, also, *Donnelly* v. *The People,* 11 Ill. 552; *People ex rel. etc.* v. *Ridgely,* 21 Ill. 66.

For the reasons given, the judgment of the court below is reversed.

*Judgment reversed.*