THE PEOPLE *ex rel.* Judson M. W. Jones

*v.*

THE NORTH CHICAGO RAILWAY COMPANY.

1. QUO WARRANTO—*leave to file, how far discretionary.* The granting of leave to file an information in the nature of a *quo warranto* is a matter of sound discretion in the court or judge. On the one hand it is not granted as a mat-

ter of right upon the part of the relator, while on the other the court can not refuse arbitrarily, but must exercise a sound discretion, in accordance with principles of law.

2. SAME—*opposing affidavits may be considered.* On an application on behalf of a private citizen for leave to file an information in the nature of a *quo warranto* against a corporation, opposing affidavits may properly be considered in determining whether leave shall be granted.

3. SAME—*when leave to file, properly refused.* Where leave was asked to file an information against a horse railway company, requiring it to show its right to extend the line of its road, and to use steam power over a part of the same, and it did not appear that the relator was either specially, as an individual, or in common with all other citizens of the town, injured by the construction and operation of the road, and it was shown, by affidavit, that the relator acquired his land, abutting upon the road, long after its construction, and that it was the almost universal desire of the people of the town, and those traveling over the road, that it be operated by steam, and the facts disclosed seemed to show the application was not asked for the public good, but rather for selfish purposes, it was *held,* that leave was properly refused.

4. If a public wrong is done by the abuse of a franchise, and no private injury appears, a proceeding by *quo warranto* must be by the public prosecutor or other authorized agent of the State, and a private citizen can not, in such case, have the aid of this extraordinary remedy. But in cases affecting only private rights, and which merely affect the administration of corporate functions, and not the existence of the corporation, the court may interpose upon a proper showing.

5. SAME—*who may file information—statute construed.* The first section of the statute relating to proceedings by *quo warranto* does not authorize any one to present a petition for leave to file an information other than the Attorney General or State's attorney, nor does it obliterate the well recognized distinctions between informations in behalf of the public to enforce public rights, and those in behalf of individuals to enforce private rights, or place the control of informations to enforce public rights in every individual who may choose to intermeddle.

6. The Attorney General or State's attorney, if the information affects public rights only, may act at the instance of any individual who may furnish him the requisite proofs to authorize him to act, whom he may name relator, but he must act in his official capacity under a sense of official duty, and not merely lend his name for the use of a private party.

APPEAL from the Criminal Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

The record shows that at the August term, 1875, of the Criminal Court of Cook county, the following motion was presented to the court:

"And now on this day comes Charles H. Reed, State's attorney for said county of Cook, and at the instance of Judson M. W. Jones, as relator, presents to the court the annexed petition of said Judson M. W. Jones, for leave to file an information in the nature of a *quo warranto,* in the name of the People of the State of Illinois, against the North Chicago Railway Company."   *   *   *

The petition is as follows, omitting the caption:

"Your petitioner, Judson M. W. Jones, respectfully represents that the North Chicago Railway Company is a corporation created and existing by virtue of an act of the legislature of the State of Illinois, approved February 14, 1859, entitled 'An act to promote the construction of horse railways in the city of Chicago;' that some years ago said company constructed, and has ever since maintained, and still maintains, a street railway in the town of Lake View, in the county of Cook, and has for some time been, and now is, operating the same, from the northern limits of the city of Chicago, upon and along the following streets of said town of Lake View, to-wit: from such northern limits of the city of Chicago, upon and along North Clark street, by horse power, to Diversey street, at its intersection with the Evanston road, thence northerly, by steam power, upon and along said Evanston road to Graceland avenue, and thence west on Graceland avenue, by steam power, to Graceland Cemetery; that as your petitioner is informed and believes, the only warrant or authority which said company has or claims to have for the construction, maintenance and operation of such street railway within said town of Lake View, in the manner aforesaid, is the aforesaid act of the legislature of said State of Illinois, one section of which act purports to authorize said company to extend its road to any point in Cook county.

" Your petitioner is advised and believes, that so much of said act as authorizes said company to extend its railway beyond the corporate limits of the city of Chicago is unconstitutional and void, being contrary to the provisions of that clause of section 23, of article 3, of the Illinois State constitution of 1848, which provides that no private or local law which might be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title.

" Your petitioner is also advised and believes, that for the same reason, the said act does not confer upon said company the power to use steam as a means of operating its railway, even over such territory as it rightfully can maintain its track upon. Your petitioner represents that he is an inhabitant of said town of Lake View, and the owner of real estate therein contiguous to one of the streets upon which said company is operating its steam railway, and that your petitioner is desirous that leave may be given to the State's attorney for the said county of Cook and State of Illinois, on behalf and in the name of the People thereof, to file an information in the nature of a *quo warranto*, and upon the relation of your petitioner, against the said The North Chicago Railway Company, to make it answer to the said People by what warrant it claims to hold, execute and exercise the liberties, privileges, functions, powers and franchises aforesaid.

JUDSON M. W. JONES."

Verified by Jones before a notary public.

At the same time, the following affidavit was filed and presented to the court, in opposition to the motion:

" Valentine C. Turner, being duly sworn, says: That he is the president of the North Chicago City Railway Company, mentioned in the petition herein; that on the 23d day of May, 1859, the common council of the city of Chicago passed an ordinance granting permission to said company to construct and operate, by animal power, railways on several streets in the North Division of the city, and, among others, on North Clark street, from North Water street, near the business cen-

ter, for a distance of about two and and-half miles to the city limits, which was accepted by said company, and immediately said line of railway was constructed on North Clark street, and operated by said company.

"And the deponent further says, that after constructing the line on North Clark street to the city limits, said company, desiring to extend its Clark street line beyond the city limits and in the township of Lake View, for a distance of about one-half mile, the supervisor of the town of Lake View, being a town under the township organization law, on the 2d day of March, 1861, gave his assent and consent, in writing, for said company to lay down, maintain and operate its railway in, over and along Green Bay road, in said township of Lake View, from the city limits northwards, to a point forty rods north of the north line of the S. W. ¼ 28, 40 N., 14 E., provided said railway should be laid by the 1st day of September, 1861.

"And the deponent further says, that by virtue of the authority contained in its act of incorporation, and such consent of the supervisor, said company did lay down its railway in Green Bay road, from the city limits to the point named in such consent, before the 1st day of September, 1861, which formed an extension of their Clark street line, and from the time of its construction the said railway in Green Bay road, down to the present time, has been operated by said company as a part of its line, from the business center of the city of Chicago on North Clark street, charging the same fare from the northern end to any part of the city, precisely the same as if the entire line lay within the city limits.

"And the deponent further says, that on the 2d day of October, 1863, the supervisor of the said town of Lake View gave a like consent, in writing, for said company to lay down, maintain and operate their railway in, upon and along a public highway, called in the petition herein the Evanston road, to Albert street, and thence on Albert street to the Green Bay road, provided said railway should be laid by the 1st day of

June, 1864; and the deponent says, that the point designated in such last consent as the place of commencement, was the then terminus of their Clark street line, as previously constructed, and the distance of the line described in the last consent was about two miles.

"And the deponent further says, that said company, by virtue of its charter and such consent, did lay down and construct such railway, mentioned in last consent, before the 1st day of June, 1864, and from about the time it was completed to the present time it has been operated by said company with cars propelled by a steam dummy, and such line is an extension of the lines previously constructed in Clark street, in the city of Chicago, and in Green Bay road, in Lake View.

"And the deponent further says, that the inhabitants of Lake View, generally, are engaged in business in the city of Chicago, and almost all passengers who travel the tracks laid in the Green Bay road, the Evanston road and Albert street, also in the same trip, pass on and over the Clark street track within the city of Chicago, and the business transacted in Lake View by said company feeds and supports the lines operated in the city.

"And the deponent further says, that there is no public conveyance of any kind for the transportation of passengers in the town of Lake View, and by which they can travel to and from points in the city of Chicago, save the cars of said company, and there is no public conveyance by which passengers can reach Graceland Cemetery, the northern terminus of the line, and several other cemeteries in said town, save by the cars of said company.

"And the deponent further says, that such tracks in Lake View were laid at the earnest solicitation of inhabitants of that town, of the owners of property abutting upon the roads and streets occupied, and no objection has ever been made to the operation of such tracks as a railway, so far as the officers of the company know, except as made by the petition herein, and deponent believes that it is the almost universal desire of

the inhabitants of Lake View, and those who travel on the railway, that it should be operated by steam.

"And the deponent further says, that the said petitioner, Judson M. W. Jones, purchased the property owned by him about four years ago, several years after said streets were occupied by the railway company, from persons who had acquiesced in the use of the streets and roads by the railway company, and with full knowledge of the claim of right to use them for such purposes.

"And the deponent further says, upon information and belief, that this proceeding is to accomplish some private and personal end, the precise character of which is unknown to him, and is contrary to the public interest.

                                        VALENTINE C. TURNER.

"Subscribed and sworn to before me, this 8th day of September, A. D. 1875.

                                        AUSTIN J. DOYLE, *Clerk.*"

The court refused to allow leave to file the information, and the record is brought here by the appeal of Judson M. W. Jones.

The only question is, did the court err in refusing leave to file the information.

Mr. FREDERIC ULLMAN, for the appellant.

Messrs. GOUDY & CHANDLER, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Did the court err in refusing to allow the relator to file an information?

The ruling of this court is, the granting of leave to file an information in the nature of a *quo warranto,* is in the sound discretion of the court or judge to which the application is made. Leave, on the one hand, is not granted as a matter of right upon the part of the relator; and on the other hand, a

court is not at liberty to arbitrarily refuse, but must exercise a sound discretion in accordance with principles of law. *The People ex rel.* v. *Waite,* 70 Ill. 25; *The People ex rel.* v. *Callaghan,* 83 id. 128.

It is here shown that Jones is an inhabitant of the town in which the road is being operated, and the owner of real estate therein; but it is not shown that he is, either specially as an individual or in common with all other citizens of the town, injured by the construction and operation of the road. The opposing affidavit is properly to be taken into consideration in determining whether the writ should have been issued, (*The People ex rel.* v. *Waite, supra,*) and it distinctly rebuts all inference that might arise from the mere conceded fact of the construction and operation of the road, of either private or public injury, and shows also that the road was constructed long before Jones became the owner of his present property in the town; that it was constructed, and has since been operated "at the earnest solicitation of inhabitants of the town—owners of property abutting upon the road and streets occupied;" that "no objection has ever been made to the operation of the railway so far as the officers of the company know, except as made" by Jones, and that it is the almost universal desire of the inhabitants of the town and those who travel on the railway that it should be operated by steam.

Where a corporation, by the exercise of powers not conferred by its charter, does no private injury, and commits an offense against the public alone, the State may punish or waive the right to do so, as in the judgment of those entrusted with the appropriate power in that respect may be deemed most in consonance with the public interest. If a wrong is done by the abuse of the franchise, it is a public wrong, and a proceeding by *quo warranto* must be by the public prosecutor or other authorized agent of the State; and a private citizen can not, in such case, have the aid of this extraordinary remedy. High on Extraordinary Remedies, § 654, and cases cited; Angell & Ames on Corp. § 736; *Murphy* v. *Farmers' Bank,* 20 Pa. St.

415. And it is also said (High on Extraordinary Remedies, *supra*), "An exception, however, is recognized in cases affecting only private or individual rights, and which merely affect the administration of the corporate functions, without affecting the existence of the corporation, and in such cases it is held the courts may interpose on a proper showing." But, since Jones has sustained no special injury affecting his private or individual rights, this principle is not involved in the case.

It is, however, contended, that Jones is entitled to file the information, whatever may have been his rights at common law, by virtue of the provisions of § 1, chap. 112, Rev. Stat. 1874, p. 787.

That section says: " The Attorney General or State's attorney of the proper county, either of his own accord or at the instance of any individual relator, may present a petition to any court of record of competent jurisdiction, or any judge thereof in vacation, for leave to file an information in the nature of a *quo warranto* in the name of the People of the State of Illinois; and if such court or judge shall be satisfied that there is probable ground for the proceeding, the court or judge may grant the petition and order the information to be filed."

There is nothing here that authorizes any one other than the Attorney General or State's attorney to present a petition for leave to file an information. This, *he* may do either of his own accord or at the instance of any individual relator, but the language does not profess to obliterate the well recognized distinctions between informations in behalf of the public to enforce public rights, and those in behalf of individuals to enforce private rights. Nor does it assume to place the control of informations to enforce public rights in every individual who may choose to intermeddle.

The Attorney General or State's attorney, if the information affects public rights only, may undoubtedly act at the instance of any individual who may furnish him the requisite proofs to authorize him to act, whom he may name relator, but he

35—88 ILL.

must act in his official capacity under a sense of official duty, and not merely lend his name for the use of a private party; and the proceeding must be official in fact, and not simply official in form but private in fact.

In all matters in which the public alone is concerned, the law has wisely placed the control of legal proceedings in its officers selected for that purpose, and it is never admissible that these proceedings shall be allowed to be used as mere instruments for the gratification of private malice, or the attainment of personal and selfish ends.

The petition here presented is not the petition of the Attorney General or State's attorney, but of Jones, and it is Jones only, not the Attorney General or State's attorney, that prays that leave may be given to file an information. True, it appears the State's attorney presented the petition of Jones, and made the motion, but it is quite evident this was merely formal.

The appeal is prayed and prosecuted by Jones, and no complaint is made by the Attorney General or State's attorney of the refusal of the court below to give leave to file the information; but errors are assigned and argued by the private counsel of Jones alone.

The court below, in the exercise of its discretion, was authorized to take into consideration the circumstances showing the character of the proceeding, and if satisfied, as we think it was justified in being, that the purpose was merely to allow a private party to institute proceedings in a matter concerning the public alone, it was not only within its discretion, but likewise its duty to refuse to allow the information to be filed.

Finding no evidence in the record of abuse of discretion, the judgment is affirmed.

*Judgment affirmed.*