(No. 21045.—

THE PEOPLE *ex rel.* Gustav E. Seegren, Appellee, *vs.* SAM-
UEL J. SACKETT *et al.* Appellants.

*Opinion filed February 23, 1933.*

ALLAN J. CARTER, and ALFRED R. BATES, (CHARLES CENTER CASE, and FERRIS E. HURD, of counsel,) for appellants.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, J. J. NEIGER, WILLIAM H. GRUVER, and ADAMS, HAWLEY, BROWN & ADAMS, (SAMUEL ADAMS, and MELVIN M. HAWLEY, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

This suit was instituted in the circuit court of Cook county, where the appellee filed his petition for leave to file an information in the nature of *quo warranto* against the appellants, as commissioners of the Northeast Park District of Evanston. Leave was granted to file the information to which appellants filed certain pleas. Demurrers were sustained to these pleas and the court entered an order ousting the appellants from office. From this order the present appeal was taken.

Briefly stated, the demurrers charge that the appellants failed to set up facts in their pleas showing compliance with the provisions of the Park District act of 1895 when the park district was organized. The principal facts in dispute concern the formation of the park district, and the

election of five commissioners therefor, under an act of the General Assembly entitled, "An act to provide for the organization of park districts and the transfer of submerged lands to those bordering on navigable bodies of water," approved June 24, 1895, and in force July 1, 1895, as amended. (Cahill's Stat. 1931, chap. 105, par. 295.) Pursuant to petitions filed for the formation of the district and for placing the names of appellants on the ballots as candidates for the five places as commissioners, the county judge issued his order calling the election for July 9, 1929. This order provided that the instructions for the voters, the printing and distribution of the ballots, the manner of conducting the election, of marking and casting the ballots and of counting and canvassing the votes should all be done in accordance with the provisions of the general election laws (including, among others, the Australian Ballot law,) unless the terms of the Park District act of 1895 should otherwise provide. This order also provided that commissioners should be chosen at the same election, and that the names of the five persons nominated for commissioners be printed upon the ballot. The order required the polls to be open from 7:00 in the morning until 7:00 in the afternoon. The election was held in accordance with the order of the county judge, and he canvassed the returns made to him. He then issued an order declaring that all the acts and proceedings required by law to be done before and at the election had been fully and lawfully done and that 817 votes had been cast at the election—411 for the organization of the proposed park district and 406 against it. His order further declared that the appellants, whose names were on the nominating petition and ballots, were elected, and proclaimed the park district to be a body politic.

The appellants question the petition for leave to file the information upon the theory that it was not the petition of the State's attorney but was, in fact, the petition of the relator, alone. This contention is based upon a

number of factors which the appellants deem very important. It is shown by the record that the relator is the lessee of some land comprised within the bounds of the park district. This land the district endeavored to purchase for its own purposes. Failing in this, condemnation proceedings were started. Negotiations were conducted at length by the parties in an endeavor to arrive at a purchase figure, the relator being represented by private counsel. This condemnation suit and an election contest over the right of the present commissioners to office, which was also started by the relator through the same counsel, are still pending. This same counsel also appears in the present case in behalf of the appellee. In short, it is the endeavor of the appellants to show that the present suit is an entirely private matter of the relator, that the State's attorney is nothing more than a figurehead in the entire proceeding, and that he lent the name and prestige of his office to the furtherance of a private and personal matter which does not possess an iota of public interest. This argument of appellants is not borne out by the record. The subject matter of this suit was laid before the State's attorney of Cook county by the relator and his counsel. That official caused a thorough examination to be made of the facts and circumstances surrounding the creation of the park district. He even went to the extent of holding a hearing in his office, at which the appellants and the relator were represented—a practice heretofore held unnecessary by this court. (*People* v. *Healy*, 230 Ill. 280.) As a result of his investigation the State's attorney became convinced that the contentions of the relator concerning the illegality of the organization of the district under the Park District act of 1895 possessed sufficient merit and direct public interest to warrant their submission to a court of competent jurisdiction. The State's attorney signed the petition upon its presentation to him, making it an instrument presented to the court in the name and by the authority of the peo-

ple of this State, which was proper. (*Wight* v. *People*, 15 Ill. 417.) This court said in the case of *Chesshire* v. *People*, 116 Ill. 493, that the constitution of 1870 does not require that the people shall present or prosecute but only that the prosecution shall be carried on in the name and by the authority of the people. Where interests involved are not private, the mere fact that people of the community affected were interested and retained counsel in aid of the prosecution of the *quo warranto* proceeding does not bring the case within the class condemned by this court in *People* v. *North Chicago Railway Co.* 88 Ill. 537. Throughout the proceeding nothing developed to show that a high writ of the people was being used for furtherance of a private or personal right. On the contrary, the case was never divested of its public character and interest that first attached when it was started in behalf and by authority of the people. The petition sets up facts sufficient to engender a reasonable belief that rights, privileges, franchises or offices were being usurped or unlawfully exercised in violation of law and to the detriment of the public. When such is set forth, probable ground exists for the granting of the petition. (*People* v. *Blair*, 339 Ill. 57.) The determination of whether or not the petition presented meets the test given above is for the sound discretion of the court to which the petition is presented. (*People* v. *France*, 314 Ill. 51; *People* v. *Anderson*, 239 id. 266.) No abuse of that discretion is shown by the action of the court in allowing the petition to be filed in this case.

The contention that the information was filed before the petition has no merit in view of *Lavalle* v. *People*, 68 Ill. 252, where it was held that the filing of an information in the nature of a *quo warranto* without prior notice or leave is not the commencement of the suit. Until the petition is granted the information on file in the office of the clerk of the court is a mere nullity. The affidavits of the appellants in support of their preliminary contentions regard-

ing the petition merely amount to a denial of the allegations of the petition, and leave to file should not be set aside for that reason. (*People* v. *Blair, supra.*) Neither can the rule of unreasonable delay or acquiescence be invoked by the appellants. True it is that we have stated that a court, when considering a petition for leave to file an information in the nature of *quo warranto,* may consider that acquiescence on the part of the public generally will justify a refusal to grant leave to file the information where the granting will produce great inconvenience and public detriment. (*People* v. *Cox,* 311 Ill. 529; *People* v. *Keene,* 322 id. 255.) Many of the cases where the rule has been applied have been those involving community school districts. No hard and fast rule can be stated, the facts of each case determining whether the rule should apply. This being a public action the doctrine of *laches* cannot be imputed to the State, as it cannot be affected by the negligence or willfulness of its officials. The Statute of Limitations does not run against the sovereign. Mere delay, alone, will not invoke the rule, for the delay must work to the disadvantage of another. *People* v. *Keene, supra.*

When the judgment of ouster was entered by the trial court it was not based upon a hearing of evidentiary facts but upon the sustaining of appellee's demurrers to the pleas of justification. We are therefore limited solely to a consideration of those pleas and to the points of law raised with reference to their sufficiency. In other words, this is essentially a finding upon the pleadings and not upon the ultimate facts. The information in the nature of *quo warranto* must contain charges which are general in their nature. The defendants in such a proceeding are upon the defensive. Their duty is to either disclaim or justify. Where, as in this case, justification is attempted, the defendants must aver by their pleas all of the facts necessary to show their lawful authority to wield the powers or exercise the rights claimed by them. (*People* v. *Blair, supra;*

*People* v. *Hartquist,* 311 Ill. 127.) The burden of proof was upon the defendants (appellants here) and the People were under no compulsion to show anything to substantiate their charges. *People* v. *Karr,* 244 Ill. 374.

The pleas of appellants are attacked by appellee first because the county judge did not possess authority to act in the organization of the district. In this connection the appellee argues that in organizing the park district the county judge exceeded his statutory authority, which was ministerial and not judicial in character. This position is untenable. The powers conferred upon the county judge by the Park District act and exercised by him in the present case are almost identical with those previously held to be judicial powers in *People* v. *White,* 334 Ill. 465. There this court said: "By the City Election law the county court is called upon to exercise judicial power. The petition for the adoption of the act is to be filed in the county court. That court is to judge of the sufficiency of such petition and submit the proposition to a vote of the people; (1 Cahill's Stat. 1927, sec. 1, p. 1138;) to give the legal notices of such election and instruct the judges and clerks of election as to the canvass of the ballots; (ibid. sec. 2;) likewise it is the duty of the county court to pass upon the sufficiency of a petition to reject the act when once adopted; (ibid. sec. 16;) to appoint election commissioners; (ibid. art. 2, sec. 1;) appoint and control, under the act, judges and clerks of election, and to hear objections to the appointment thereof and evidence on such objections, and review the discharge of judges and clerks; (ibid. sec. 13;) * * * and shall preside over and supervise the canvass of votes at an election and cause to be entered of record in that court the result of such election. (Ibid. art. 5, sec. 7.) These and other provisions of the act call for the exercise of judicial power."

It is to be noted that under the City Election law involved in the *White case* the petition shall be presented to

"the judge of the county court;" (sec. 1;) likewise, "the judge of such county court shall give at least sixty days' notice of such election;" (sec. 2;) "the judge of the county court shall * * * canvass the returns, * * * said county judge shall demand of and receive possession from such county clerk the ballots so cast, * * * shall write across the face thereof, 'Opened by the county judge,'" etc. (Sec. 10.) These references are made only to show that the terms "county judge" and "judge of the county court" have been used interchangeably in the same act to mean the same official, and that the construction placed by this court upon the exercise of such judicial powers by the county court, whether he be termed "county judge" or "judge of the county court," applies equally as well to almost identical powers exercised by the same official under the Park District act. By way of justification the first additional plea has set up *in hæc verba* the exact manner in which the county judge exercised the powers conferred upon him by the Park District act, and they are also set out in full in the petition-for-leave. Authorities are numerous in this State holding that the organization of park or other districts created by statute is a judicial function. *People* v. *Astle,* 337 Ill. 253; *People* v. *Stumpf,* 275 id. 81; *People* v. *Shaw,* 253 id. 597; *People* v. *North Fork Drainage District,* 331 id. 68; *Lavin* v. *Cook County Comrs.* 245 id. 496.

By way of further attack upon the jurisdiction of the county judge to act in his statutory capacity in the organization of the district, the demurrers to the pleas charge the filing of five separate petitions, whereas only one petition containing the signatures of one hundred qualified signers is required by the Park District act. The assertion is made that the organization petition, which is designated in the pleadings as the "first roll," was never presented to the county judge but was only filed in the office of the county clerk. It is further alleged that a duplicate, desig-

nated as a "second roll," was at the same time filed in the office of the clerk of the county court. The appellee asserts that the eighteen sheets called the "first roll" were, in fact, five distinct petitions, none of which contained the requisite one hundred signatures. It is charged that two of the petitions contained three pages each and three of the petitions contained four pages each; that the first page and about two-thirds of the second page of each of the five petitions were taken up with the subject matter and the remaining spaces on the second and each of the remaining pages were taken up with the signatures. Section 2 of the Park District act in part recites: "Any one hundred legal voters resident within the limits of such proposed park district, may petition the county judge * * * to cause the question to be submitted to the legal voters of such proposed park district, whether they will organize as a park district under this act; upon the filing of such petition in the office of the county clerk * * * it shall be the duty of the county judge," etc. The statute does not prescribe any exact form or context of the petition. The not uncommon practice of securing signatures upon separate sheets and then binding them together as one instrument was undoubtedly used in the present case. Appellants' pleas stated that both the first and second "rolls" were "presented to and deposited with the county clerk of Cook county," and that the "matters of said petitions were then and there heard and considered by the county judge." Where "petitions" are referred to, the appellants were undoubtedly referring to only one document, as an original and duplicate petition had been filed in each of the offices of the county clerk and clerk of the county court. This averment of the pleas is in substantial compliance not only with the statutory requirements but also with the language of the petition-for-leave filed by appellee and verified, as it recites that the organization petition was filed in the office of the county clerk and came before the county judge of Cook

county, and "that on or about June 7, 1929, said county judge signed an order." The order is then set forth in full in the pleas. As we have said above, the statute does not prescribe that the petition for the organization of a park district shall be prepared in any certain manner, as, for instance, petitions for the placing of names on a ballot. In this case the sheets were bound together and filed as one "bundle" or instrument and are to be considered as one petition. This is in accord with what this court previously held when a similar situation arose over an annexation proceeding. *Village of Averyville* v. *City of Peoria,* 335 Ill. 106.

It is contended by appellee that the county judge lacked authority to consider and act upon the petition nominating candidates for commissioners of the district. It is argued that because statutes exist which provide for the use of nominating petitions where a district is already organized but fail to make any provision for such petitions in a proceeding to organize a new district it is improper to use nominating petitions in the organization of a new district. Section 2 of the Park District act authorizes the calling of an election by the county judge to determine whether a park district shall be organized or not and to elect five commissioners. Section 3 of the same act prescribes the form of ballot to be used, making provision thereon as to voting for or against the organization of the park district and for voting for five commissioners. The Park District act of 1895 is a complete system for organizing, improving and maintaining park districts. (*People* v. *Illinois Central Railroad Co.* 307 Ill. 457.) Section 2 of the act is silent as to the necessity of nominating petitions for the offices of commissioners. It does not expressly declare what will avoid the ballot. The printing of the names of the five candidates for commissioners on the ballot in the present case did not vitiate their election or the election establishing the park district, inasmuch as the act does not declare that such pro-

cedure is wrong. This court has held that where a statute does not expressly declare that particular informalities avoid the ballot, the requirements of that statute will be considered as directory, only. (*Parker* v. *Orr*, 158 Ill. 609.) Voters at the election were not precluded from voting for others than those whose names were printed on the ballot. Any voter at the election could have written in the name of any person or persons on the ballot and cast his vote accordingly. (*Sanner* v. *Patton*, 155 Ill. 553.) The county judge certified that no one other than the five whose names were printed on the ballots received any votes for commissioners. While the Park District act of 1895 is a complete act, a reading of it will show that the legislature has deemed it wise to leave to the county judge a great degree of latitude in matters pertaining to elections held under its provisions. This act, while mandatory in some of its provisions in regard to elections held thereunder, is also in many matters directory, only. Where a statute is directory in character it will not be construed by this court to defeat the results of a majority of the votes cast at an election. (*Schuler* v. *Hogan*, 168 Ill. 369.) The county judge in his order calling the election placed in the hands of the county clerk the task of preparing and furnishing to the judges of election the ballots and instructions for the voters. The order made the Australian Ballot law, as well as the other laws of the State applicable to general county elections, apply to these activities of the county clerk. This order also prescribed the form of ballot to be used, and the statute was followed in that respect except so far as pertained to the printing on the ballots the names of the five candidates nominated by petition as commissioners. Section 2 of the Australian Ballot law, upon which that part of the order respecting the county clerk was founded, was fully considered by this court in *People* v. *Cook County Comrs.* 345 Ill. 172. The law clearly imposed upon the county judge the duty of seeing that an election was held, and the case

last cited is authority for holding also that under such circumstances the county was obligated by our general system of county organization to pay the expenses of the election. Section 3 of the Park District act provides for the election of commissioners at the same time as the question of organizing the park district is to be decided. These two related matters are to be on the same ballot by the express provisions of the statute. The placing of certain nominees on the ballot by petition was not prohibited by statute and did not invalidate the election by preventing anyone from voting either against the district or for other persons whose names were not printed on the ballot. *Sanner* v. *Patton, supra; Fletcher* v. *Wall,* 172 Ill. 426; *People* v. *Graham,* 267 id. 426.

It is also contended by appellee that the county judge did not keep a record of the giving of notice of the election, and that the pleas in this respect were legally insufficient. Each of the pleas of justification sets out *in hæc verba* the form of notice prescribed and posted; that such notice was printed on cards of certain size; that such notice was posted in twenty-four public places within the park district; that the certificate of the county clerk, with copy of notice annexed, was delivered to the county judge and was by the county judge delivered to and impounded with the clerk of the county court. The charge of appellee that the county judge did not make or keep a record was thus wholly without merit. The records of the county judge were properly kept and preserved by his order impounding them with the clerk of the county court, as the clerk is the legal custodian of all such records.

Fault is also found by appellee in his allegation that appellants had failed to qualify for the offices of commissioner. His argument is that the pleas are insufficient, inasmuch as the oath taken by the commissioners bound each of them to perform his duties "to the best of his ability" rather than to perform without any reservation as to abil-

ity. Section 7 of the Park District act provides: "Each of said commissioners before entering upon the duties of his office shall take and subscribe an oath to well and faithfully discharge his duties as such commissioner, which oath shall be filed in the office of the clerk of the county in which the commissioner resides." No part of this oath is enclosed in quotation marks or otherwise set apart from the rest of the section. It is therefore clear that the legislature intended to state only the substance and not the exact language of the oath to be used. Section 25 of article 5 of the constitution of 1870 provides that all civil officers, except members of the General Assembly and others exempted by law, shall, before taking office, subscribe to and take the following oath or affirmation: "I do solemnly swear (or affirm, as the case may be), that I will support the constitution of the United States, and the constitution of the State of Illinois, and that I will faithfully discharge the duties of the office of.......... according to the best of my ability." The constitution further provides that "no other oath, declaration or test shall be required as a qualification." In view of the failure of the Park District act to prescribe the exact form of the oath, the constitutional provisions applied and were properly followed in administering the oath to the commissioners, and the contention of appellee in this regard is without merit.

By his pleadings the appellee contends that the order of June 7, 1929, was void because it ordered the polls to open at 7:00 in the morning and to close at 7:00 in the afternoon, whereas the Australian Ballot law fixes the hour of opening at 7:00 and the closing at 5:00. The pleas set out the order in full, also the order of July 11, 1929, wherein the county judge found that "all acts and proceedings required by law to be done before and at said election have been duly and lawfully done." The appellee here invokes the Australian Ballot law to re-enforce his contention while otherwise he says that such law does not apply.

Aside from this inconsistency no grounds exist here for sustaining demurrers on that point, which, in effect, would hold the election void because the polls remained open until 7:00 o'clock. A statute governing the opening and closing hours of the polls is directory, and a deviation from its terms does not vitiate an election unless it is shown that it was fraudulently done or unless the statute in express terms makes the hours of opening and closing the polls essential to a valid election. *People* v. *Crossley,* 261 Ill. 78; *Hodge* v. *Linn,* 100 id. 397; *Blankinship* v. *Israel,* 132 id. 514.

Appellee further complains because votes cast in the election by absentee voters in favor of the establishment of the proposed park district were counted, alleging that they should have been rejected because the Park District act of 1895 made no provision for the use of the Absentee Electors law. (Cahill's Stat. 1932, chap. 46, pars. 150-158.) The wording of the Absentee Electors law clearly reflects a legislative intent for it to apply to any special, general or primary election. The scope of the act is general, applying to all of the electors of the State. Its chief purpose is to prevent the disfranchisement of electors absent from their voting districts on the day of election. The act was made to apply to "district" elections. As the word "district" is commonly used in legislative acts pertaining to election matters it means "any one of the various divisions or subdivisions into which the State is divided for political or other purposes." (*Olive* v. *State,* 11 Neb. 1, 7 N. W. 444.) An election held for the purpose of organizing and electing commissioners of a park district under the Park District act of 1895 is a district election, to which the provisions of the Absentee Electors law clearly apply.

The only remaining point of any significance raised by demurrer and relied upon by appellee is that the judges of election improperly rejected at least fifteen ballots, which, had they been counted as valid votes, would have produced

a majority against the organization of the district. Appellee argues that "it is a fair presumption" that these ballots were rejected because in each instance the voter had voted for the five commissioners and against the organization of the park district. This allegation of the petition-for-leave was supported only by an affidavit of a person that he was informed by a watcher at the polls that seventeen ballots were not counted by the election judges of one precinct because they were considered inconsistent and illegal. The pleas of appellants set forth at length all of the proceedings had in the organization of a park district and the various orders entered by the county judge. With reference to the point under consideration the pleas recite in part: "and said county judge then and there canvassed the aforesaid returns of said election, and thereupon, as more fully set forth in said order of July 11, 1929, then and there further considered and adjudged that the result of said election was that the aggregate number of votes for and against the organization of said park district was 817 votes, and further considered and ajudged that 411 of said votes had been cast 'For Park District' and that 406 of said votes had been cast 'Against Park District,' and that at said election a majority of votes cast were in favor of the organization of said park district, and that at said election the proposal that said park district be organized as a park district under the name of 'Northeast Park District of Evanston,' pursuant to the provisions of the Park act of 1895, had carried, and that such district constituted in law and equity a body corporate and politic and should thenceforth be deemed an organized park district under said Park act of 1895, all as is more fully set forth in and by the aforesaid order of July 11, 1929." The demurrers allege, among other things, that such plea fails to justify and should be stricken, as it did not aver that a majority of votes cast at the election were in favor of the proposed park district.

Reference to that part of the plea above quoted shows appellee's argument wholly unfounded. The judgment entered in the county court, as set forth in the pleas, was not predicated upon an election contest, as there was no re-count of the ballots by the county judge and the final order there was entered simply upon a canvass of the election returns. The ballots in question were not brought before the county judge, and were therefore not described in the pleadings available either to the circuit court or to us on review. Obviously, without these ballots there was no way for the trial court to correctly determine from the pleadings whether fifteen or more of them had been improperly rejected by the election judges. The plea stated the canvass of the votes and the result of the election with sufficient certainty and detail to answer its purpose. The plea was not, as claimed, a pleading of evidence, but rather stated all the facts then available, without a re-count, to show that a majority vote was shown by the canvass to have been cast in favor of the organization of the district. No further facts could have been properly pleaded, and the facts pleaded were sufficient for a *de jure* title, under the rule announced in *People* v. *Hartquist, supra.*

In view of what we have said above it will not be necessary for us to consider at length the numerous other errors assigned by appellants. We have examined all the issues raised by the pleadings in behalf of appellee and have dealt at length with such matters as we deemed material to the issues involved. The others not mentioned we do not deem material. What we have said herein applies not only to the first additional plea but also to the second and third additional pleas and to the first plea as amended. Demurrers for substantially the same reasons were sustained to each of those pleas and appellants elected to stand by them. As to each of the pleas mentioned the trial court erred in sustaining the general and special demurrers.

380

The judgment of the circuit court of Cook county is accordingly reversed, the order of ouster issued by that court on July 7, 1931, is held null and void, and the cause is remanded to that court for further proceedings in consonance with the above expressions of this court.

*Reversed and remanded.*