(No. 22127.—

THE PEOPLE *ex rel.* F. H. Lange *et al.* Appellants, *vs.* THE OLD PORTAGE PARK DISTRICT, Appellee.

*Opinion filed April 21, 1934—Rehearing denied June 6, 1934.*

THOMAS J. COURTNEY, State's Attorney, and LAWLOR, WALSH & BERNSTEIN, (EDWIN D. LAWLOR, of counsel,) for appellants.

T. B. McGRATH, JR., and FRANK S. RIGHEIMER, for appellee.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

An information in *quo warranto* by appellants against the Old Portage Park District, appellee, charging unlawful annexation of territory, was dismissed and the writ quashed by the superior court of Cook county. The principal grounds for dismissal were that appellants had been guilty of *laches* in presenting their complaint and that great public inconvenience and damage would result if the relief sought were granted. Upon the court's refusal to enter a judgment of ouster this appeal was taken.

In the petition for leave to file the information it is alleged that appellee is a park district in Cook county created under "An act to provide for the organization of park districts," etc. (Park act of 1895; Smith's Stat. 1933, chap. 105, pars. 256 *et seq.*) Appellee is charged with unlawfully asserting jurisdiction over certain territory because of an annexation election held November 5, 1929, pursuant to an illegal petition filed in the county court of Cook county on October 11, 1929. This petition for annexation, while purporting to have been signed by one hundred twenty-two legal voters, is alleged to have been signed by less than one hundred legal voters residing within the territory sought to be annexed. On this point it is averred that the petition for annexation was signed twice by the same persons, that it was signed by persons who did not reside within the territory to be annexed, and that certain persons whose names appear upon the petition did not sign it or authorize anyone to sign for them. Other allegations of legal irregularities or insufficiencies are made by appellants which we deem it unnecessary to consider. Upon leave granted, the information was filed, containing the same allegations as the petition. Appellee demurred generally and also specifically attacked the information, averring that it showed upon its face that appellants had been guilty of *laches* in attacking the annexation. The demurrer was overruled and appellee pleaded matters in justification.

Preliminary to a consideration of the petition for annexation we must first settle a dispute between the parties as to who carries the burden of showing that the questioned signatures are legally insufficient. The case of *People* v. *Sackett,* 351 Ill. 363, had to determine the question of the legal organization of a park district under the same Park act of 1895. There we held that the defendants in a *quo warranto* proceeding must either disclaim or justify. When justification is attempted, the pleas must aver all of

the facts necessary to show their authority. The People are not in the first instance required to show anything to substantiate the charges contained in the information. Consequently the burden here rests upon appellee to justify the signatures questioned until it has established one hundred of them to be the valid signatures of one hundred legal voters residing within the territory to be annexed.

Another essential inquiry is whether, since the county judge found that the petition for annexation was signed by one hundred legal voters residing in the territory to be annexed, the sufficiency of the signatures can afterwards be questioned, inasmuch as the record imports verity. (*Nicholson* v. *Loeff*, 253 Ill. 526.) It is true that a county judge under the Park act of 1895 and the amendments thereto performs judicial functions. (*People* v. *Sackett, supra.*) In the exercise of their law jurisdiction county courts are courts of general jurisdiction, with power to pass upon the question of their jurisdiction and to exercise it when once determined. By those powers they are distinguished from inferior courts having limited jurisdiction. (*Anderson* v. *Gray*, 134 Ill. 550; *People* v. *Miller*, 339 id. 573.) In the case last cited, which had to do with the foreclosure of a lien for taxes levied by a school district, this court dealt at some length with the nature and jurisdiction of county courts. Therein we said that section 18 of article 6 of the constitution of 1870 declared county courts to be courts of record, with original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators and settlement of their accounts, in all matters relating to apprentices, in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law. This last clause is pertinent to the case at hand. The *Miller case* is authority for the rule that every judgment of a court which is not based upon that court having jurisdiction is void—not voidable—and can be attacked at

any time, in any court and in any proceeding in which it is brought in question.

County courts, by virtue of statutes, are given jurisdiction to adjudicate certain special matters which without statutory authority they would have no power to decide. Discussing these powers derived from special statutes, this court in the case of *Cobe* v. *Guyer*, 237 Ill. 516, said that when a court of general jurisdiction is clothed with powers not according to the course of the common law and is exercising special statutory powers, no presumptions will be indulged in to bring a matter within its jurisdiction. This holding was re-affirmed in *Musselman* v. *Paragnik*, 317 Ill. 597, (a will contest,) wherein there arose the question of the validity of adoption proceedings in a county court. We there held that as the right of adoption was unknown to the common law and is purely a statutory proceeding, the jurisdiction of the county court in adoption proceedings is not exercised according to common law formulas but in derogation thereof, and therefore no presumption could be indulged in as to its jurisdiction.

In *People* v. *Stumpf*, 275 Ill. 81, we held that a petition for the organization of a park district under the Park act of 1895 could not be amended, as the proceeding under the act was purely statutory and the act made no provision for amending faulty petitions. "The filing of a petition," we said, "clearly defining the territory intended to be embraced within the proposed district, signed by at least one hundred voters resident within the limits of the proposed district, is jurisdictional, and the county judge is not empowered to act and to call an election in the absence of such a petition. * * * If the petition lacked any of the essential requirements, such as a failure to clearly define the territory intended to be embraced within the district or in failing to be signed by at least one hundred legal voters resident within the territory, it would not vest the county court with jurisdiction to act." In the last phrase

quoted, "county court" was inadvertently used instead of "county judge," as is shown by another statement: "The county judge had no more power to order an election upon a petition signed by the attorney for the petitioners than he would have had to order an election upon his own initiative without any petition at all. He can only act upon the filing of a petition which meets the requirements of the statute." As we are concerned with a special proceeding created by statute giving the county judge special power to act in derogation of the common law, it follows that the proceedings and findings of the county judge that the petition for annexation contained the required number of qualified signers cannot be the recipient of any jurisdictional presumptions.

Inspection of photostatic copies of the signatures upon the petition shows that there are thirty-five groups of two signatures each, and that the two signatures in each group were signed by the same person. This double-signing, clearly shown by the record, is buttressed by the testimony of a handwriting expert. Appellee in its pleas has failed to justify the questioned signatures by showing that they were placed upon the petition by persons authorized to do so. Thirty-five of the seventy signatures composing the groups mentioned were not signed by the persons whose names appear on the petition, and these signatures are therefore a nullity. This is the rule where it is self-evident that two signatures to a petition for annexation were made by one person, either by the husband or by the wife. (*People* v. *City of Springfield,* 328 Ill. 172.) Deducting four signatures of persons living without the territory and one signature of a person who signed twice, there remains a net of eighty-two valid signatures—eighteen short of the number required by statute. The requirement of one hundred legal voters by the statute is mandatory and not directory. This failure to have the petition for annexation contain the requisite number of valid signatures of legal

voters residing within the territory sought to be annexed invalidates the annexation proceeding, unless, as urged by appellee, appellants are estopped by their own delay from questioning the matter.

Subsequent to the election on November 5, 1929, and after the territory had been declared by the county judge to be a part of the park district, appellee, for park purposes, levied taxes upon the enlarged district for 1930, 1931, 1932 and 1933. Being without ready funds, appellee sold tax anticipation warrants to the extent authorized by law—against the taxes for 1929, $126,300; 1930, $159,000; 1931, $127,000; 1932, seventy-five per cent of the levy. Taxes were extended by the county clerk against the property in the enlarged district as follows: 1929, $282,556, and 1930, $281,000. Taxes were extended and collected in the enlarged district for park purposes as follows: 1929, $53,786 extended and $34,720 collected; 1930, $52,611 extended and $23,955 collected; 1931, $34,610 extended and $5072 collected up to April 1, 1933. Prior to the institution of this suit appellee issued and sold $110,000 of bonds. The expressed purpose of this bond issue was to use the proceeds thereof in "providing funds for the payment of land condemned or purchased, and for the building, mantaining and improving and protection of the same and for the payment of expenses incidental thereto." The bond proceeds, however, were devoted to the retirement of indebtedness of appellee incurred long before the annexation proceeding. Appellee has levied taxes, which cover the territory in question, for the purpose of paying the principal and interest due on the bond issue. The bonds and tax warrants are now outstanding and unpaid in large amounts. However, the county clerk did not put in collection the 1929 taxes against the enlarged district until in 1931—a short time before this suit was started. The taxes for 1929 could not legally be spread over the enlarged district, as at that time the terri-

tory annexed was not part of the district. This action has no bearing in determining the questions of acquiescence and injury. The tax warrants authorized by appellee in January and February, 1930, payable out of 1929 taxes, in the amount of $126,300, could not constitute a charge upon the property annexed to the district, for the taxes of that year were not a lien upon such property. Subsequent sales of tax warrants were made after the suit was started. Therefore such sales are of no aid to the contention that there had been acquiescence and consequent injury. This act was done just prior to the present suit. The proceeds therefrom were diverted from their avowed purpose and used to discharge obligations of appellee incurred before the annexation election. The territory sought to be annexed derived no benefit from the bond issue. The park district, as originally constituted, derived whatever benefit may have ensued from incurring the obligations which the bond proceeds discharged. It may work some injury on the people of the original park district to retire the bond issue but will not work an injustice, as they have received what they will eventually pay for. The injury inflicted will be comparatively slight, as the territory sought to be annexed constituted only about thirteen per cent of the assessed value of the entire district. It cannot be said that the appellants acquiesced in the issuance and sale of the bonds, as the interval—slightly over a year—between those acts and the starting of this suit was too short. No *laches* can be imputed under such circumstances. *People* v. *Keigwin,* 256 Ill. 264; *People* v. *Union Elevated Railroad Co.* 269 id. 212.

The judgment of the superior court of Cook county is reversed and the cause is remanded to that court, with directions to re-instate the writ of *quo warranto,* to sustain the information and to enter a judgment of ouster in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*